POPE *vs.* THE BANK OF ALBION.

Any language, whether verbal or written, employed by an officer of a banking institution whose duty it is to know the financial standing and credit of its customers, representing that a check drawn upon it is good and will be paid, *estops* the bank from thereafter denying, as against a *bona fide* holder of the check, the want of funds to pay the same. This doctrine should be most rigidly applied, as against the banks.

Experience has shown the necessity of relying upon the representations of the proper officers of the banks as to the existence of funds to the credit of those drawing checks upon them, and when these representations are made, sound policy requires that the banks shall be held responsible for their truth, and not be at liberty to show their falsity, as against *bona fide* holders of the checks who have purchased the same upon the strength of such representations. *Per* GEO. G. BARNARD, J.

Early in February, 1866, B. drew his check on the defendant's bank, for $3000, payable to himself or order, post dated March 1, and procured C., the assistant cashier of the bank to write "accepted, A. J. C., A. Cash." on its face. The drawer had no funds in the bank, at the time, and C. had no authority to certify or accept the check. The check was subsequently indorsed by B. to G. and by G. to the plaintiff. In an action against the bank, upon the check, the referee found as facts that the plaintiff paid full value for the check, without actual notice of anything tending to impair its validity. *Held* that the plaintiff was entitled to recover.

*Held also*, that section 4 of chapter 363 of the act of 1840, as amended by chapter 251 of the laws of 1850, prohibiting a bank from issuing a note or bill not payable on demand and without interest, had no application to this case.

The present case held to be clearly distinguishable from *The Clarke National Bank* v. *The Bank of Albion*, (52 *Barb.* 592.)

APPEAL from a judgment entered upon the report of a referee.

The action was brought to recover the amount of a certified check.

The referee found the following facts: That on the 2d day of March, 1866, P. W. Gallaudet presented to the plaintiff, at the city of New York, a check drawn by one O. F. Burns, of which the following is a copy:

"$3,000.          Albion, N. Y., March 1, 1866.

Cashier of the Bank of Albion, pay to self or order, three thousand dollars, and charge to the account of

O. F. BURNS."

Which check was indorsed by said O. F. Burns and by said P. W. Gallaudet, and had written on the face thereof the following words:

" Accepted,                    A. J. CHESTER, A. Cash."

That said Gallaudet requested the plaintiff to cash said check, and the plaintiff thereupon, without actual notice of anything tending to impair the validity of said check, beyond what appeared upon the face of the check and the circumstances attending the transfer thereof to the plaintiff, purchased the same from said Gallaudet, and paid him therefor the full sum of three thousand dollars. That the plaintiff thereupon caused said check to be forwarded to said Bank of Albion for collection, and it was presented to the defendant's bank for payment on the 3d day of March, 1866, when payment was demanded from the defendant and refused. That said check when so presented to the plaintiff by said Gallaudet, was stamped with a United States two cent revenue stamp. That the acceptance written upon the face of said check was signed by A. J. Chester in the early part of February, 1866, in violation of his duty as assistant cashier of the defendant's bank, which appointment he then held, the said O. F. Burns, the drawer of said check, not having then, or at any time afterwards, any funds in said bank to pay the same, and his said acceptance thereof was made without the knowledge or consent of the defendant, and without any authority from it to accept or certify the same. That said A. J. Chester had been previously appointed by the defendant, assistant cashier, specially for the purpose of signing circulating notes of said bank, and continued to occupy the same position and under the same appointment until after the 3d day of March, 1866. That during all the time aforesaid, Lorenzo Burrows was cashier of said bank, and a Mr. Brooks, teller. That the defendant had never authorized any of its officers to certify to

checks, but had prohibited them from so doing. That it was not shown that said A. J. Chester had ever been vested with any of the general powers of cashier or teller of the defendant's bank, or with any other power than the special authority above mentioned. That said check, accepted or certified as aforesaid, by said Chester, had, during the month of February, 1866, been put into circulation by said O. F. Burns, and had been purchased by said Gallaudet prior to March, 1866.

And the, referee found, as matters of law, that such acceptance being of a post dated check, when made in February, 1866, was void, because it was in violation of the provisions of the laws of 1840, chapter 363, 364, as amended by chapter 251 of the laws of 1850; also for want of authority in said Chester to so accept the same. That even if said Chester had subsequently and on the 1st and 2d days of March, 1866, authority, as "assistant cashier," to certify checks upon the defendant's bank, the plaintiff is chargeable with notice of the extent of this agency, and of his authority in the early part of February, 1866, to do the act which he then performed, and for which the defendant is sought to be charged. That the defendant was not chargeable for this act of assumed agency, which was unauthorized and illegal when performed, even if said Chester subsequently and on the 1st and 2d days of March, 1866, had full authority to accept or certify said check. That neither the aforesaid appointment of the said Chester as "assistant cashier," nor his assumption of such employment in said bank, vested him with any general power to perform the duties of cashier or teller, or to accept or certify any checks upon said bank. That his acceptance or certification of said check was without authority from, or ratification by, the defendant, and it was never bound thereby, nor did it ever accept or certify said draft or check.

And the referee decided that the defendant was entitled to judgment, with costs, and ordered accordingly.

The plaintiff appealed from the judgment, to the general term.

*Brown & Estes*, for the appellant.

I. The plaintiff, it will be seen from the evidence, was clearly a *bona fide* holder of the acceptance for full value, (and the referee does not find otherwise.) There certainly was no evidence of *mala fides* on his part, which must be shown, to defeat a recovery. (*Hall* v. *Wilson*, 16 *Barb.* 548. *Goodman* v. *Harvey*, 4 *Adol. & Ell.* 870. *Solomons* v. *The Bank of England*, 13 *East*, 135. *Steinhart* v. *Boker*, 34 *Barb.* 436. *Goodman* v. *Simmons*, 20 *How. U. S.* 363.)

II. One of the grounds upon which the referee dismissed the complaint, as stated in his report, was that it was not shown that Chester had ever been vested with any of the general powers of cashier or teller of the defendant's bank, or with any power except to sign circulating notes of the bank, and therefore held the plaintiff chargeable with constructive notice of the extent of his agency, regardless of his position of *bona fide* holder for value. The evidence of the defendant is, that Chester was appointed by a resolution of the board to sign circulating notes, but the same witness, the president of the bank, as well as the president of the Atlantic Bank, the defendant's correspondent in New York, testified that Chester, for many years previous to and subsequent to the date of the acceptance, did the defendant's correspondence, indorsed and collected its paper, and performed other acts within the duties of a bank cashier. These acts having been done at the request of and for the bank, were as binding as though included in the resolution. (*Story on Agency*, § 54.) The referee clearly erred in this conclusion, and in admitting evidence. Chester was an officer of the bank; he was more than a special agent, and the plaintiff is not chargeable with

notice of any limit or restriction of his duties by the bank. The rule that a party dealing with a special agent must inform himself as to the extent of his power, does not apply in this case, and especially as against a bank certifying in various forms the checks of depositors. The bank selects its officer and places him in a position of responsibility; the trust and confidence thus reposed in him by the bank leads others to confide in his integrity. Persons having no voice in his selection are obliged to deal with the bank through him. The appointment of a cashier of a bank is a representation to strangers that he is clothed with all the duties of such an officer. The decision is in conflict with the law as laid down in the case of the *Farmers' &c. Bank* v. *The Butchers and Drovers' Bank,* (16 *N. Y.* 130.) In that case the paying teller certified checks to be good where the drawer had no funds to pay them, contrary to authority and the banking law, but as the plaintiff was a *bona fide* holder, it was held he was entitled to recover, even though the certification was otherwise void for want of authority by the banking law to make the same. In the case of *Stoney* v. *The Am. Life Ins. Co.,* (11 *Paige,* 635,) it was held that a negotiable security of a corporation which, upon its face, appears to have been duly issued by such corporation, and in conformity with the provisions of its charter, is valid in the hands of a *bona fide* holder thereof, without notice, although such security was in fact issued for a purpose, and at a place not authorized by its charter, and in violation of the laws of the State where it was actually issued. It was within the scope of the apparent authority of the cashier to accept or certify the check in question, as it appeared upon its face to the plaintiff, when he purchased it; and while he is bound to know the law, to wit, that a cashier cannot certify that a customer's account is good when he has no funds, yet he is not responsible for ignorance of the extrinsic fact that there were no funds, which fact the officers of the bank know;

but which they have the right to conceal from all persons occupying the relation of the plaintiff in this case. Since the case before the court was decided, the case of the *Clarke Bank* v. *Bank of Albion,* (52 *Barb.* 597,) has been reported, and holds that "Chester, as cashier, was one of the financial officers of the bank in its daily and ordinary business transactions; and had ample and unquestioned authority to certify checks drawn on the bank by its customers, in all cases where any officer could do the same, and bind the bank." This authority is regarded as general, growing out of the officer's position in the bank, and persons dealing with the bank are not in any way affected or bound by the special restrictions and limitations imposed upon him by the corporation."

The word *accepted* across a check upon a bank, as has been seen, is the same as the word *good.* Judge Selden says, in the case of the *Butchers' and Drovers' Bank,* certifying a check as good is equivalent to accepting by the bank, and the general term arrive at the same conclusion, in the case of *Story* v. *Bank of Albion, Rochester general term, op. by Judge Davis.* To hold that a person taking such paper must ascertain such a fact as the limit of authority, would, in the language of Judge Selden, in the case of the *Butchers and Drovers' Bank,* be obviously in conflict with the whole policy of the law in regard to negotiable paper. In the case of a *bona fide* holder, the apparent authority is the real authority. (*See p.* 139.) The only difference between the case last cited and that before the court, is, that in one case the restriction was against certifying when there was no funds, and in the other against certifying at all. The extent of the limit does not affect the principle involved. If Chester was empowered to or did act with the consent of the bank in any particular as cashier, the bank is responsible to a *bona fide* holder for any act of his apparently within the scope of his authority, or the authority of a cashier. Suppose the cashier of a bank was re-

stricted from doing one of a cashier's duties, and that one of the most usual ones, can it be said that if he, in violation of that restriction, performs the act restricted, creating an obligation in the form of negotiable paper, which passes into the hands of a *bona fide* holder, the bank will not be liable. Being assistant cashier made him no more a special agent of the bank, than though he were cashier, if he could perform all the cashier's duties, and the simple use of the words "assistant cashier" would indicate such authority. But treated in the light of a special agent, the bank is responsible to pay the acceptance, independent of the rule applying to negotiable paper, notwithstanding the drawer had not sufficient funds to pay the check. In the case last cited, Judge Selden says, at page 132, "I shall treat the case as one of agency specially restricted, and shall simply inquire whether a *bona fide* holder for value of a negotiable check, certified by a special agent, whose authority is limited to cases where the bank has funds of the drawer in hand, can enforce payment of the check, provided the bank has no such funds;" and in this relation the Court of Appeals held the bank liable for his acts. The court further held that if the paper is, upon its face, such as the corporation may issue, and the only defect consists of extrinsic facts, to hold that an innocent purchaser must inquire as to these facts, would be in conflict with the policy of the law relating to negotiable paper. In the case of *The Bank of Genesee* v. *The Patchin Bank*, (3 *Kern.* 309, 312,) the defendant was sued upon paper it indorsed for the accommodation of a railroad company. Judge Denio says, at page 315, "the officers of a bank have no right to indorse in its behalf the paper of persons in which it has no interest, or to make the bank a party to paper for the accommodation of any one. These contracts are void upon the same principle that an indorsement by a partner, of the firm name, without the consent of his copartners, for the benefit of a third party, would be inoper-

ative against the firm; but if the partner affixes the partnership name to paper, in which the firm has no interest, and such paper is negotiated to an innocent holder for a valuable consideration, the firm is bound." (*Catskill Bank* v. *Stall*, 15 *Wend.* 364.) "The giving of a note in the partnership name by a partner, is a virtual representation that it is given in the partnership business, and if negotiable, this representation is deemed in law to have been made to every subsequent *bona fide* holder of the note." (*State of Illinois* v. *Delafield*, 8 *Paige*, 527. 2 *Hill*, 159.) It is claimed that Chester was a special agent; but whether general or special, he was the cashier of the bank for the performance of certain cashier's duties, and the word assistant implied nothing more than that he acted generally as assistant, and therefore his acts would receive the same verity as those of the cashier.

III. It matters not in this case whether Chester was a general or special agent; or whether he was prohibited or restricted from certifying or accepting checks; unless the plaintiff knew of the restrictions; because the act of accepting being within the apparent scope of his authority, he was enabled by the defendant to, and he did certify falsely, and thus defrauded the plaintiff. The defendant is therefore liable within the familiar rule that as between two innocent persons that one must lose who puts it in the power of a third person to defraud. This doctrine is rocognized in the case of the *Butchers and Drovers' Bank.* (*See also Hern* v. *Nichols*, 1 *Salk.* 289.) The rule in regard to special agency does not, therefore, apply to this case.

IV. The defendant is also estopped from proving that the drawer had no funds, or not sufficient funds, with which to pay the check, if the act of acceptance " clearly inferred " to a *bona fide* holder for value that the drawer had funds in the bank with which to pay the check. (*See Bank of Genesee* v. *The Patchin Bank*, 19 *N. Y.* 312; *Irving Bank* v. *Wetherald*, 36 *id.* 335; *N. Y. and N. H. R. R.*

*Co.* v. *Schuyler*, 34 *id.* 73.) The doctrine of estoppel has been extended so far as to apply to the indorser of a note void for usury, and a recovery was had against him when he falsely alleged it was business paper. (*Holmes* v. *Williams*, 10 *Paige*, 326. *Dowe* v. *Schutt*, 2 *Denio*, 621. *Truscott* v. *Davis*, 4 *Barb.* 495. *Dezell* v. *Odell*, 3 *Hill*, 215.) The certificate or acceptance of a check by a bank clearly amounts to a declaration that it is in funds to pay it. Such would be the presumption as against an individual. (*See Thurman* v. *Van Brunt*, 19 *Barb.* 409 ; *Kingman* v. *Hotaling*, 25 *Wend.* 423.) And as a bank cannot legally become surety for another upon paper in which it has no interest, it is clearly inferable, and is a declaration to that effect.

V. The referee further held that the check being post dated, as well as the acceptance thereof by the defendant's cashier, was void, and in violation of the laws of 1840. (*Laws of* 1850, *ch.* 363, § 4, *as amended by ch.* 251.) This section prohibits a bank from issuing a note or bill not payable on demand, and without interest. The acceptance in question was payable on demand, on the day of its date and without interest. And although it was post dated, yet it did not so appear to the plaintiff, who first saw and purchased it the next day after its date. And whether the acceptance was void or not in the hands of a holder with knowledge of the fact that it was post dated, yet the defendant is clearly estopped from setting up the defense against a *bona fide* holder for value, upon the ground that the acceptance was upon its face, on and after its date, a declaration made to him on the day of its date, that the drawer's account was good. The doctrine of estoppel applies to paper expressly made void by statute, as has been seen. The bank is therefore liable for the acts of Chester, and it must sustain the loss rather than the plaintiff, within the rule that, as between two innocent persons, that one must lose who puts it in the

power of a third person to defraud. (*Hern* v. *Nichols*, 1 *Salk.* 289. *Farmers' &c. Bank* v. *Butchers and Drovers' Bank*, 16 *N. Y.* 133.) The doctrine of estoppel as applied in this case, is recognized in the case of ·*Story* v. *The Bank of Albion*, opinion by Judge Davis, (general term opinion,) which case was like this, except, that the plaintiff purchased the acceptance *before its date*, and he was not allowed to recover, for the reason that he was not a *bona fide* holder, he having knowledge that it was post dated, and it did not therefore appear to him that the acceptance was a declaration of an existing fact, but that the fact certified will be true on a future day. The court, however, concede that a *bona fide* holder might recover in this case.

*J. M. Van Cott* and *E. A. Doolittle*, for the respondent.

I. As between the bank and Burns, the drawer, and Gallaudet, the indorsee, the acceptance was manifestly void.

II. And the plaintiff cannot recover upon an acceptance void in its inception, unless he can prove himself a *bona fide* holder, without any notice to put him on inquiry. He is not such a *bona fide* holder. 1. He had notice of the physical fact, that a draft offered for sale "about eleven o'clock" in the morning of March 2, could not have been presented at the Bank of Albion during bank hours on March 1. 2. He saw on the face of the draft, in the word "accepted," an explanation of the presence of the draft in this city on the 2d, viz, that it had been drawn upon time, post dated, and accepted before the 1st of March. 3. The attempted explanation of the transfer by Gallaudet to the plaintiff, throws a cloud of suspicion over the whole case. (*a.*) It was not possible for the plaintiff to make anything on the transaction, he paying the "full" $3000. (*b.*) It was certain, on the other hand, that he must lose the whole cost of collection ; and must take all risks besides. (*c.*) It does not appear that he had ever

made a similar transaction either before or since. (*d.*) And he did it all, that Gallaudet might possibly save $7.50, and that he should certainly lose $1500. Such miracles of friendship are· possible, but commercial transactions proceed on a.different footing. 4. Upon the state of facts proved the referee had a right to find, and it was his duty to find, that the cashier had accepted the draft without authority; that the defendants had never ratified his unauthorized act, and that the plaintiff had not the rights of a *bona fide* holder. (*See Laws of* 1838, *ch.* 380, §§ 18, 21; *Laws of* 1841, *ch.* 319, § 1; *Laws of* 1840, *ch.* 363; *Laws of* 1850, *ch.* 251; *F. and M. Bank* ·v. *Butchers and Drovers' Bank,* 16 *N. Y.* 130; 14 *id.* 627; *Potter* v. *Merchants' Bank*; 28 *id.* 649; *Leavitt* v. *Blatchford,* 5 *Barb.* 25; *Beach* v. *Vandewater,* 1 *Sandf.* 265.)

*By the Court,* GEO. G. BARNARD, J. I think the judgment should be reversed.· This case is clearly distinguishable from *The Clarke National Bank* v. *Bank of Albion,* (52 *Barb.* 592.) In that case the plaintiff was not a bona fide holder for full value of the check, as is the plaintiff in this case.· The learned referee finds that the plaintiff paid° full value for the check, and had no actual notice of any fact impeaching its validity. I think, within the principles established by the case cited, that the plaintiff is entitled to recover. In that case the court say : "Chester, as cashier, was one of the the financial officers of the bank, in its daily and ordinary business transactions; and had ample and unquestioned authority to certify checks drawn on the bank, by its customers, in all cases where any officer could do the same and bind the bank. This authority is regarded as general, growing out of the officer's position in the bank, and persons dealing with the bank are not in any way affected or bound by the special restrictions and limitations imposed upon him by the corporation, whose agent he is. In this case the defendant's

liability is sought to be established upon this general and conceded power. There is no claim made by the defendant, or if there is, it is wholly unsupported by the evidence, that Ward & Bro. had any notice of the special restrictions given to the cashier by the chief stockholder and president of the bank. * * * To enable the plaintiff to recover upon this paper, it must appear that he became the owner and holder in good faith, for a full and fair consideration, in the usual course of business, and without notice of the cashier's want of power to make the certification. (*Hall* v. *Wilson,* 16 *Barb.* 550.) This rule is elementary; and does not need to be supported by the citation of authorities which are so full and abundant.

Applying this test, it is at once apparent that the plaintiff cannot recover; for he did not pay anything for this paper until after the check was returned to him by the defendant, dishonored. That the holder must have parted with something of value upon the strength and in consideration of the transfer of the paper, is well settled. A party taking negotiable securities upon a precedent debt, relinquishing nothing of value at the time, or without any consideration, is not a purchaser for a valuable consideration.

I regard this doctrine as demonstrating the plaintiff's right to recover, upon the facts found by the referee and indisputably proven. Suppose that the plaintiff had, in company with Burns, the drawer of the check, gone to the bank, and producing the check, inquired whether it would be paid, and had been answered by Chester in the affirmative, and had thereupon cashed the check, as he did in New York, would anybody doubt the plaintiff's right to recover? I think not. In principle, Chester, made the same representations when he wrote the word "accepted." This expression is equivalent to saying "that check is good;" that the drawer had funds in the bank which would be applied in payment of the check

Pope *v.* Bank of Albion.

when presented for that purpose. We must regard the substance of things, and not mere form. Any language, whether verbal or written, employed by an officer of a banking institution, whose duty it is to know the financial standing and credit of its customers, representing that a check drawn upon it is good, and will be paid, *estops* the bank from thereafter denying, as against a bona fide holder of the check, the want of funds to pay the same. This doctrine should be most rigidly applied as against the banks. They clothe their officers with powers necessary to operate them successfully, and experience has shown the necessity of relying upon the representations of the proper officers of the banks as to the existence of funds to the credit of those drawing checks upon them. When these representations are made, sound policy requires that the banks shall be held responsible for their truth, and not be at liberty to show their falsity, as against bona fide holders of the checks, who have purchased the same upon the strength of such representations.

These great moneyed corporations carry on their business operations only through their officers. If they violate their duties by representing that the drawer of a check has funds, when the contrary is the fact, it is the misfortune of the bank, as it is the misfortune of every principal employing agents who exceed their authority. In such a case, I am of the opinion that when a loss must be sustained by either the bank or the person relying on such representations, it must fall upon the former. The law of 1840, as amended in 1850, has no application to this case, that I can discover.

The judgment should be reversed, and a new trial ordered, costs to abide the event.

New trial granted.

[FIRST DEPARTMENT, GENERAL TERM, at New York, April 4, 1871. *Ingraham*, P. J., and *Cardozo* and *Geo. G. Barnard*, Justices.]