GARRETTSON et al. v. NORTH ATCHISON BANK.

*(Circuit Court, W. D. Missouri, St. Joseph Div. June 17, 1889.)*

1. BANKS AND BANKING—CHECKS—ACCEPTANCE.
   A cattle company had agreed to sell to one T. certain cattle for $22,000. T. offered in payment his check on defendant bank. The vendor refused to accept it unless plaintiffs, to whom vendor was indebted, would accept it in payment of the debt. The payee in the check telegraphed to defendant asking if it would pay T.'s check for $22,000, and defendant telegraphed: "T. is good. Send on your paper." The telegram was shown to plaintiffs,

who took the check in payment of their debt. *Held*, that the answer was an acceptance of the check for the sum named in the first telegram, and was sufficient, under Rev. St. Mo. § 533, providing that an acceptance of a bill of exchange must be in writing, and section 534, providing that an acceptance on a separate paper will bind the acceptor in favor of one to whom it has been shown who takes the bill on the faith thereof for a valuable consideration, to render defendant liable to plaintiffs on the check.

**2. SAME—ACCEPTANCE BEFORE CHECK DRAWN.**

In such case the evident purpose of the inquiry being to obtain assurance of payment before taking the check defendant, was liable under Rev. St. Mo. § 535, providing that an unconditional written promise to accept a bill before it is drawn shall be deemed an actual acceptance in favor of any person to whom it is shown, and who on the faith thereof receives the bill for a valuable consideration.

At Law. Action on a check. Demurrer to petition.

*Karnes, Holmes & Krauthoff*, for plaintiffs.

*Lancaster, Hall & Pike*, for defendant.

PHILIPS, J. This cause stands on demurrer to the petition. Omitting the formal matters, the petition alleges in substance that the Muscatine Cattle Company, on the 28th day of September, 1888, sold to one James Tate 1,000 head of cattle at the agreed price of $22,000. Tate tendered in payment thereof his check drawn on the defendant bank. The said cattle company, being indebted in a large sum at that time to plaintiffs, refused to deliver the cattle, or to accept said check, from said Tate unless plaintiffs would accept the said check in payment of said indebtedness of said cattle company to them, which plaintiffs declined to do unless defendant would certify said check to be good. Thereupon said cattle company sent or caused to be sent, from Pueblo, Colo., to defendant at Westboro, Mo., the following telegram: "Will you pay James Tate's check on you twenty-two thousand dollars? Answer." Which said telegram was received by defendant, whereupon it sent to said cattle company the following answer: "James Tate is good. Send on your paper." Upon the receipt of this answer said cattle company and Tate exhibited the same to plaintiffs, whereupon plaintiffs, in reliance upon said acceptance and certification of said check, agreed to accept the same for the purpose aforesaid; and the said cattle company, in reliance on said telegram, accepted said check, and delivered to said Tate said cattle, and, after duly indorsing said check to plaintiffs, delivered the same to them, which the plaintiffs accepted in reliance upon said acceptance or certification, and duly entered credit therefor on the indebtedness of said cattle company to them. The petition then alleges presentment for payment, and the refusal of defendant to pay the said check, and the due protest thereof. Judgment is asked for said sum, with interest and protest fees, damages, and costs. The demurrer is general that the petition does not state facts sufficient to constitute a cause of action. The argument in support of the demurrer is that there was no acceptance in writing, in contemplation of the statute; that the answer sent by telegram from defendant was at most but a promise to pay, and, the petition not averring that said Tate had any funds at the time in the bank, the promise was wholly voluntary; that if the plaintiffs have any remedy it is against

the payee named in the check, who might then have action against the defendant on the breach of promise.

A brief recurrence to some general principles applicable to bank checks may not be impertinent, as a due regard to these will materially aid in a proper conclusion. Many text writers liken such checks, in their substance, to inland bills of exchange, payable on demand. 1 Rand. Com. Paper, § 8; Byles, Bills, 13; 1 Edw. Bills, § 19. Mr. Justice SWAYNE, in *Bank* v. *Bank*, 10 Wall. 647, very aptly notes the essential difference between checks and bills of exchange:

"Bank checks are not inland bills of exchange, but have many of the properties of such commercial paper; and many of the rules of the law-merchant are alike applicable to both. Each is for a specific sum, payable in money. In both cases there is a drawer, a drawee, and a payee. Without acceptance no action can be maintained by the holder upon either against the drawer. The chief points of difference are that a check is always drawn on a bank or banker. No days of grace are allowed. The drawer is not discharged by the laches of the holder in presentment for payment, unless he can show that he has sustained some injury by the default. It is not due until payment is demanded, and the statute of limitations runs only from that time. It is by its face the appropriation of so much money of the drawer in the hands of the drawee to the payment of an admitted liability of the drawer. It is not necessary that the drawer of a bill should have funds in the hands of the drawee. A check in such case would be a fraud. * * * By the law-merchant of this country the certificate of the bank that a check is good is equivalent to acceptance."

It would therefore follow that when a check has been certified, which is but the equivalent of acceptance, by the drawee, it stands, in its commercial relation, as an accepted bill of exchange. From its acceptance the implication arises that it is drawn upon sufficient funds of the drawer in the hands of the drawee, and that such fund is set apart, appropriated, for the check whenever presented. It is not only an admission that the drawer then has in the hands of the drawee the required fund, but it imposes the obligation on the drawee to reserve and hold the fund for the redemption of the check when presented. *Bank* v. *Bank, supra.* Nor is it material, as between a *bona fide* transferee of the check and the drawee, that the drawer in fact had no money in the bank at the time of the acceptance. The certification operates, in such case, an effectual estoppel against such defense. *Cooke* v. *Bank,* 52 N. Y. 96; *Bank* v. *Bank, supra; Jarvis* v. *Wilson,* 46 Conn. 90–92; 2 Daniell, Neg. Inst. § 1603. Such accepted check, possessing the quality of commercial paper, passes by indorsement, and confers upon the indorsee the right of action, as upon any other chose in action. *Freund* v. *Bank,* 76 N. Y. 355, 356; *Bank* v. *Richards,* 109 Mass. 413; *Whilden* v. *Bank,* 64 Ala. 29, 30.

It only remains, therefore, to be determined whether or not the defendant bank did accept the payment of the check in question, and, if it did accept, what are the rights of these plaintiffs? The check being drawn on a Missouri bank, to be paid here, the state statute regulating the matter of acceptances of such paper applies.

"Sec. 533. *Acceptance of Bill of Exchange must be in Writing.* No person within this state shall be charged as an acceptor of a bill of exchange

unless his acceptance shall be in writing, signed by himself or his lawful agent. Sec. 534. *Acceptance Written on Separate Paper will Bind Acceptor, when.* If such acceptance be written on a paper other than the bill, it shall not bind the acceptor, except in favor of a person to whom such acceptance shall have been shown, and who upon the faith thereof shall have received the bill for a valuable consideration."

The statute recognizes, what had already become the established common-law rule, that the acceptance may be written on a paper other than the bill, and of consequence, it may be made by letter, and, if by letter, also by telegram. *Bank* v. *Bank,* 1 N. Y. Leg. Obs. 26; *Espy* v. *Bank,* 18 Wall. 604; *Whilden* v. *Bank,* 64 Ala. 32, 33. "The statute requires the promise to be in writing, but is silent as to the mode of communicating it to the party cashing the draft upon the faith of it. When it is in writing and thus acted upon, its mode of conveyance, whether by telegraph, mail or otherwise, affects no rights, and such effect must be given to it as manifest justice, and the exigencies of commerce call for in this class of communications." *Bank* v. *Howard,* 40 N. Y. Super. Ct. 20. The material facts disclosed by the petition are that the Muscatine Cattle Company had contracted to sell to one James Tate 1,000 head of cattle at the price of $22,000. In payment, Tate tendered to the company his check for $22,000, drawn on the defendant bank. Before the vendor would accept said check, and part with his property, and before the plaintiffs would accept the check as payment on the indebtedness of the cattle company to them, the payee named in the check telegraphed to defendant and received from it the answer alleged in the petition. The question raised by the argument on the demurrer is as to whether this correspondence constitutes an acceptance within the meaning of the law-merchant and the statute, or whether it amounts simply to a promise to accept or pay. Reading the two telegrams together, in the light of the ordinary understanding and acceptation of such terms among commercial men, it does seem to me that the plain meaning and purport of the answer was an acceptance of the check for the sum expressed in the first telegram. The language of the inquiry made in the first telegram clearly indicated that the check had been drawn by Tate on defendant for $22,000; and defendant was asked if it would pay it. It would seem to be a strained construction that the check named was to be sent on merely for acceptance. The answer was that "Tate is good. Send on your paper." If the check had been presented to the bank in the ordinary way, and the drawee had indorsed thereon the word "Good," undersigned by its proper officer, it would by all the authorities have amounted to a certification of a check. *Espy* v. *Bank,* 18 Wall. 604; 2 Rand. Com. Paper, § 648. The language "send on your paper," taken in connection with both telegrams, clearly implies that it is to be sent on for payment, and not merely for acceptance. In *Coolidge* v. *Payson,* 2 Wheat. 66, Chief Justice MARSHALL states the rule that "a letter, written within a reasonable time before or after the date of a bill of exchange, describing it in terms not to be mistaken, and promising to accept it, is, if shown to the person who

afterwards takes the bill on the credit of the letter, a virtual acceptance, binding the person who makes the promise." While in the subsequent case of *Boyce* v. *Edwards*, 4 Pet. 111, the ruling in *Coolidge* v. *Payson*, was reviewed, the rule as stated by Chief Justice MARSHALL was not disturbed where the letter of acceptance applies directly to a particular bill drawn or to be drawn. By section 535, Rev. St. Mo., it is provided that "an unconditional promise in writing to accept a bill before it is drawn shall be deemed an actual acceptance in favor of every person to whom such written promise shall have been shown, and who upon the faith thereof shall have received the bill for a valuable consideration." It would be difficult to perceive, on principle, what difference there could be in a promise to accept before drawing and the facts as disclosed in the petition. The defendant, in the very nature of such commercial transactions, must have understood that the purpose of the inquiry made of it was to have the payment of the check assured if taken by the party sending the telegram. The answer was shown to the plaintiffs, and in reliance upon the assurance it contained the plaintiffs accepted the check. As well settled in this jurisdiction, the application of the check by the plaintiffs to the indebtedness to them from the cattle company was for a valuable consideration, and constitutes them *bona fide* holders of the check, and as such the right of action thereon inures to them regardless of any equities between the original parties. *Railroad Co.* v. *Bank*, 102 U. S. 14–22; *Pope* v. *Bank*, 59 Barb. 226; *Bank* v. *Howard, supra; Whilden* v. *Bank*, 64 Ala. 1–30; *Freund* v. *Bank*, 76 N. Y. 353–358; *Johnson* v. *Clark*, 39 N. Y. 216; *Coolidge* v. *Payson*, 2 Wheat. 66. The conclusion is that the petition does state facts sufficient to constitute a cause of action, and the demurrer is therefore overruled.