No. 22,636.

W. G. McAdoo, Director General of Railroads, Operating the Atchison, Topeka and Santa Fe Railroad, *Appellant*, v. The Farmers State Bank of Zenda and F. M. Smith, *Appellees*.

### SYLLABUS BY THE COURT.

1. BANKING—*Certification of Check—Equivalent to Acceptance of Bill of Exchange.* The certification of a check by the bank on which it is drawn is equivalent to the acceptance of a bill of exchange (Negotiable-instruments Law, § 194) and implies that the check is drawn upon sufficient funds in the bank's possession, that they have been set apart for its satisfaction, and that they shall be so applied whenever the check is presented for payment.

2. SAME—*Certification of Check—Creates an Original Liability on Part of Bank.* The certification of a check by the bank on which it is drawn creates an original liability on the part of the bank, and in an action on the check it may not resist the enforcement of its contract of certification in order to make a set-off or defense available to its depositor.

Appeal from Kingman district court; GEORGE L. HAY, judge. Opinion filed April 10, 1920. Reversed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*Clark A. Wallace,* and *S. S. Alexander,* both of Kingman, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The plaintiff brought an action against the Farmers State Bank of Zenda to recover upon a check for $2,000 drawn upon the bank by F. M. Smith in favor of C. H. Cowles, plaintiff's station agent at Zenda, and duly certified by the bank. In its answer, the bank attempted to justify its refusal to pay by alleging that Smith directed it not to pay the check for certain reasons stated in the answer, and the bank asked that Smith be made a party defendant. The plaintiff's demurrer to the answer and motion for judgment on the pleadings were both overruled. Smith was made a defendant and filed an answer setting up the same facts upon

which the bank relies. A demurrer to his answer was over-ruled, and the plaintiff appeals.

In Smith's answer, he alleged that the certified check was required by the plaintiff's station agent as a condition precedent to permitting him to examine a carload of corn consigned to him, without first surrendering the bill of lading, and that the agent at the same time agreed that if he would deliver the check duly certified by the bank he would be permitted to inspect and examine the contents of the car, and if the corn was found satisfactory and of the grade and kind he had purchased, he would be permitted to accept it and remove it from the car, but if for any reason he desired not to accept the corn, he would not be required to do so, and the check would be returned to him. The answer shows that upon the delivery of the certified check, the agent broke the seals of the car, the doors were opened and Smith inspected and examined the corn; that it was unsatisfactory, and he refused to accept it. His answer alleged, further, that he never paid the bank any money or consideration for certifying the check, and that the plaintiff had paid no consideration for the check or its certification. These were substantially the facts relied upon by the bank as its defense.

Our Negotiable-instruments Law (§ 194, Gen. Stat. 1915, § 6715) provides—

"Where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance,"

and section 196 (Gen. Stat. 1915, § 6717) provides—

"A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

The purpose of a certified check is that it may circulate as money, and it has been said that "If certified checks are to circulate as money and to perform the useful purpose in trade they have heretofore, the deposit of them in bank to the credit of the holder must be, so far as the rights of the endorser are concerned, treated as a deposit of money." (*Blake v. Savings Bank Co.*, 79 Ohio St. 189, 201.)

In 7 C. J. 707, it is said:

"By the certification the bank enters into an absolute undertaking to pay the check when it is presented, at any time before it becomes

barred by the statutes of limitations, and the bank is estopped to deny that it possessed sufficient funds of the drawer to pay the check."

In 5 Cyc. 538, it is said:

"Where a check is accepted by the bank this operates to transfer the amount to the holder, and the latter has a right to sue the bank if it afterward refuses to pay."

The certification of a check amounts to an appropriation of the money of the drawer in the hands of the drawee to the payment of an admitted liability of the drawer, whether or not there be funds there.

In *Bank v. Bank*, 74 Kan. 606, 609, 87 Pac. 746, it was said:

"A request upon a bank that it accept a check is a request for the creation of a legal relation between the holder and the bank wholly without and beyond the purview of the paper. If such relation be established it imposes upon the bank a liability to a party to whom it was not before bound at all, and it converts the privilege of the bank to pay if in funds into an absolute and unconditional duty to pay, no matter what may be the state of the depositor's account."

The opinion quoted with approval the following language from *Kahn, Jr., v. Walton et al.*, 46 Ohio St. 195, 206:

"But after the bank has paid the check, or placed itself under an obligation to pay it, the drawer's power of revocation is ended. This obligation may be incurred by acceptance. . . . By the acceptance a new and specific engagement is entered into by the bank, which is, to unconditionally pay the sum named to the legal holder of the check."

In *Blake v. Savings Bank Co.*, supra, it was ruled—

"The object of certifying a check is to enable a holder to use it as money. The drawer or endorser of a certified check cannot, after its delivery, revoke it or stop payment upon it by notice to the drawee not to pay, and a bank that has received a certified check for deposit and has credited the depositor with the amount of it, is a *bona fide* holder and may enforce payment of it notwithstanding it may, before payment to the depositor, have received notice that the check was fraudulently obtained by the depositor." (Syl. ¶ 3.)

In *Merchants' Bank v. State Bank*, 10 Wall. 604, which is a leading case, it was said:

"By the law merchant of this country the certificate of the bank that a check is good is equivalent to acceptance. . . . The object of certifying a check, as regards both parties, is to enable the holder to use it as money. The transferee takes it with the same readiness and sense of security that he would take the notes of the bank. It is available also to him for all the purposes of money. Thus it continues to

McAdoo v. Bank.

perform its important functions until in the course of business it goes back to the bank for redemption and is extinguished by payment.

"It cannot be doubted that the certifying bank intended these consequences, and it is liable accordingly. To hold otherwise would render these important securities only a snare and delusion." (pp. 647, 648.)

It is unnecessary to inquire whether there was a consideration passing from the railroad company to the drawer. If it were, the facts he attempted to plead show what amounted to a delivery of the car and its contents into his possession, which would constitute a consideration. The facts pleaded in the answer of the bank establish no defense on its part. When it certified the check, the latter ceased to possess the character of a check and represented so much money on deposit payable on demand to the holder. In effect, the certification operated the same as though the bank had actually paid the money to the railroad company, and the latter had immediately deposited it to its own credit. If the check is certified to be good, "in contemplation and by operation of law, it is the same as if the funds had been actually paid out by the bank to the holder, by him redeposited to his own credit, and a certificate of deposit issued to him therefor." (2 Daniel on Negotiable Instruments, 6th ed., § 1603.) (See, also, Morse on Banks and Banking, 2d ed., 307-315; *First Nat. Bank of Jersey City v. Leach*, 52 N. Y. 350.)

In *Carnegie Trust Co. v. First Nat. Bank*, 213 N. Y. 301, it was said:

"We find no authority for the proposition that a bank may resist the enforcement of its contract of certification in order to make a set-off available to its depositor. . . . By common use such checks are treated for most purposes as the equivalent of cash (*White v. Eiseman*, 134 N. Y. 101, 107.) It would be an unfortunate rule that would impair their ready acceptance in the transactions of commerce. If the holder of a check, after procuring it to be certified by a bank, may be required to litigate the question whether the maker of the check had a right of counterclaim or set-off, the transaction has not been safely closed until the cash has been collected. That has not heretofore been supposed to be true. In the words of Peckham, J., in *First Nat. Bank of Jersey City v. Leach* (52 N. Y. 350, 353): 'The bank virtually says that check is good; we have the money of the drawer here ready to pay it. We will pay it now, if you will receive it. The holder says, no, I will not take the money; you may certify the check and retain the money for me until this check is presented.' If the bank may resist payment

whenever the drawer has omitted to take advantage of a right of set-off, the holder's safety is illusory." (pp. 306, 307.)

It was error to permit the drawer to be made a party to the action. The demurrer to the bank's answer should have been sustained.

The judgment is reversed, and the cause is remanded with directions to enter judgment for the plaintiff.