Farmers Bank v. Stapleton.

No. 25,990.

THE FARMERS BANK OF MORRILL, *Appellee,* v. JESS H. STAPLETON,
*Appellant.*

### SYLLABUS BY THE COURT.

1. CHECKS—*Presentation and Acceptance by Telegram.* It is not a prerequisite to a binding acceptance of a bank check that the check be physically presented at the bank; and a clear and unequivocal acceptance may be made by an exchange of telegrams in which the bank responded to an inquiry concerning defendant's check: "Will pay check one hundred fifty dollars, signed by Jess H. Stapleton. Farmers Bank of Morrill."

2. SAME—*Honor and Acceptance by Telegram—Liability of Bank.* When a bank, in response to an inquiry if it would honor a check drawn on it by its customer, wires an affirmative answer thereto, the bank thereby binds itself absolutely to pay the check if promptly presented by any holder to whom such telegram was shown and who on the faith thereof received the check for value; and the drawer's instructions to stop payment of the check, which instructions were not received by the bank until after it had telegraphed its reply to the inquiry touching the check, are ineffective to relieve the bank of its liability to pay the check, and ineffective to excuse the maker from his consequent liability to the bank after it has paid the check.

3. SAME—*Acceptance by Telegram—Liability of Drawer.* Under the circumstances stated in the opinion, the defendant drawer of the check is liable to the bank for the amount it was required to pay, plus interest thereon.

Appeal from Brown district court; C. W. RYAN, judge. Opinion filed June 6, 1925. Affirmed.

*W. E. Archer,* of Hiawatha, for the appellant.
*W. F. Means,* of Hiawatha, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff bank brought this action to recover on a check drawn on the bank by defendant and which the bank had paid to the holder.

The defense was that before the check was presented for payment the defendant had directed the bank not to pay it.

The circumstances were these: In 1920 defendant was a customer of the plaintiff bank. In it he had a time deposit of $300 and a checking account. Early in February, 1920, defendant told the plaintiff's assistant cashier that he was going to Kansas City, and that he might write a check on the plaintiff bank while he was gone,

and if he did he wanted the bank to pay it. On February 10, 1920, at the Hotel Baltimore, in Kansas City, Mo., he drew a check on the bank for $150, payable to J. F. Wilson. Defendant the same evening wrote the plaintiff's assistant cashier:

"KANSAS CITY, Mo., Feb. 10, 1920.

". . . I also want to tell you I've given a check for $150 that I want you to meet, and I will be home Friday or Saturday to fix it up with you."

About the same time Wilson, the payee, sought to get the check cashed at the hotel, but as a precaution before doing so, the hotel manager wired the bank:

"8A

"KANSAS CITY, Mo., 1028 P 2/10.

"Farmers Bank of Morrill, Ks., Morrill, Ks.

"Will you take check one hundred fifty dollars to order of J. F. Watson, signed by Jess H. Stapleton.　　　　　　　　　HOTEL BALTIMORE."

This telegram was received early the next morning, February 11, 1920, and the bank promptly replied by wire:

"2/11/20.

"Hotel Baltimore, Kansas City.

"Will pay check one hundred fifty dollars, signed by Jess H. Stapleton. "8:50 a. m.　　　　　　　　　FARMERS BANK OF MORRILL."

About two hours after this exchange of telegrams the defendant called up the bank by long-distance telephone and requested the assistant cashier to refuse payment of the check, and to pay no attention to a letter then en route which defendant had written and mailed and which dealt with the check.

On February 14 the defendant wrote to the assistant cashier:

"K. C. Mo., Feb. 14, 1920.

"Just a line about the check I talked to you about. We have decided not to buy the job, so just stop payment on it and return same to Mr. Watson."

On February 16, 1920, the check was presented and payment refused in accordance with defendant's request. The Hotel Baltimore, which had cashed the check for the payee, upon receipt of the bank's telegram on February 11, garnished funds of the bank on deposit in the Interstate National Bank of Kansas City, Mo., and judgment followed against the plaintiff bank.

Hence this lawsuit, the bank seeking a recovery against defendant for its outlay on the check and incidental costs, $164.80, and interest.

Judgment was entered for plaintiff, and defendant's assignment.

of errors deals with his views of the law applicable to the facts narrated above.

Defendant first calls attention to certain sections of the negotiable-instruments act (R. S. 52-1002, 1201, 1203, 1204, 1702, 1703, 1706), from which he deduces the conclusion that the check had to be physically presented to the plaintiff bank, at Morrill, before any acceptance or rejection was binding, and that until the check was so presented defendant had a right to stop payment. These statutory provisions do not compel the conclusion contended for, and there is good authority to the contrary. In one of our own decisions, *Bank v. Bank*, 74 Kan. 606, 87 Pac. 746, 118 A. S. R. 340, 8 L. R. A., n. s., 1148, where the telegram of inquiry read, "Is J. F. Donald's check on you $350 good?" and the bank answered, "J. F. Donald's check is good for sum named," it was taken for granted that if the bank's answer had been an unequivocal promise to pay McDonald's check for $350, there would have been an acceptance against which Donald's later stop-payment order would have been ineffectual. Various cases of inquiries by mail and telegraph relating to checks and the banks' replies thereto are set out and discussed in the opinion, and the general rule was recognized, where the language used by the bank in such letters "clearly and unequivocally imports an absolute promise to pay," a contract of acceptance external to the check is thereby created. After citing pertinent provisions of statute and apt decisions touching acceptance, the court said:

"Nor is there any dispute that the written acceptance contemplated by the statute may be made by telegrams. (7 Cyc. 765.)" (p. 609.)

The same doctrine is expanded and supported by additional citations in 8 C. J. 305.

The negotiable-instruments act contemplates that an acceptance of bills of exchange, which include checks, may be written "on a paper other than the bill itself" (R. S. 52-1103), in which respect the act is merely repetitive of our earlier law (Gen. Stat. 1901, § 548), which was considered in *Eakin v. Bank*, 67 Kan. 338, 72 Pac. 874. The books are full of cases where telegraphic communications touching checks have been construed as acceptances, so that defendant's contention that physical presentation of a check at the bank is a prerequisite to its acceptance cannot be sustained. In *Garrettson v. North Atchison Bank*, 39 Fed. 163, 7 L. R. A. 428, extensively

quoted in *Bank v. Bank*, supra, the telegram of inquiry read: "Will you pay James Tate's check on you twenty-two thousand dollars? Answer." The bank wired in response: "James Tate is good. Send on your paper." It was held that the bank's telegram constituted a written acceptance of the check, rendering the bank liable for its amount to a holder thereof who was shown the telegram and took the check for value in reliance thereon.

The present case is quite like that of *Iowa St. Sav. Bk. v. City Nat. Bk.*, 183 Iowa 1347, L. R. A. 1918F 169, where Lon Fraseur issued his check for $1,035 in favor of H. I. Ball. Ball indorsed the check to the Iowa State Savings Bank of Fairfield, but before paying any money thereon or giving Ball credit therefor, the Fairfield bank wired the City National Bank of Tipton, on which the check was drawn:

"FAIRFIELD, IOWA, June 4, 1914.

"City National Bank, Tipton, Iowa.

"Will you pay check for ten hundred thirty-five dollars signed Lon Fraseur for cattle?                "IOWA STATE SAVINGS BANK." (p. 1348.)

The Tipton bank wired the answer:

"TIPTON, IOWA, June 4, 1914.

"Iowa State Savings Bank, Fairfield, Iowa.

"We will pay check for ten hundred thirty-five dollars signed Lon Fraseur.
                                         "CITY NATIONAL BANK."

Before the check turned up for payment at the Tipton Bank the maker, Lon Fraseur, had stopped payment and the Tipton bank refused to pay the check. In the action which followed, the contention was that there was no acceptance of the check. The court said:

"If there could be no valid acceptance except by writing and signing the formal words upon the face of the instrument, the exception would have to be sustained; but this is not the law. Our negotiable-instruments statute provides that a bill of exchange does not, 'of itself,' operate as an assignment of the funds in the hands of the drawee, available for the payment thereof, and that until there is an acceptance the drawee is not liable on the bill (Code Supp. 1913, § 3060a 127), and further provides that the acceptance must be in writing, signed by the drawee (Code Supp. 1913, § 3060a 132); but it nowhere makes it necessary that such acceptance shall, in all cases, be written upon the bill itself. On the contrary, it recognizes the validity of an acceptance written on paper other than the bill, and an action can be maintained thereon against the drawee in favor of one to whom it is shown, and who, on faith thereof, receives the bill for value (Code Supp. 1913, § 3060a 134). It also makes the unconditional written promise [of the payee] to accept a bill before it is drawn the equivalent of an actual acceptance, in favor of every person who, on faith thereof, receives the bill for value." (p. 1449.)

To the same effect were *Selma Savings Bank v. Webster County Bank,* 182 Ky. 604, 2 A. L. R. 1136, and notes; and *Commercial Bank v. First Nat. Bank,* 147 La. 925, 13 A. L. R. 986; *Muentzer v. Los Angeles Trust & Savings Bank,* 3 F. (2d) 222. See, also, note to *Coolidge et al. v. Payson et al.,* (U. S.) in 4 L. Ed. 185; Note in 26 A. L. R. 312; 3 R. C. L. 1305-6.

It seems clear, both by reason and by authority, that by its telegram to the Hotel Baltimore on the morning of February 11, 1920, before it had either telephone or other request from defendant to stop payment on the check, the plaintiff bank had bound itself unequivocally to honor and pay the check to the hotel company, as it was precisely the sort of party defined and protected by the statute —"a person to whom it [the telegram] is shown and who on the faith thereof receives the bill for value." (R. S. 52-1103.)

While the foregoing seems to conclude the matter, on precedent and principle, there is another and simpler view that leads to the same conclusion. Whether the undisputed facts of this case constitute in every technical sense an acceptance of the check, or whether pursuant to the request of defendant, on his departure for Kansas City, the bank *did give* an affirmative response to the telegraphic inquiry of Hotel Baltimore. When that affirmative response was acted upon by the hotel, the bank's liability was that of a principal debtor to the hotel, not a mere surety or guarantor, and it could not relieve itself of that obligation on stop-payment instructions received from defendant two hours later by telephone or some days later by mail. (*McAdoo v. Bank,* 106 Kan. 662, and citations, 189 Pac. 155.) It was at defendant's request that the bank committed itself and had to pay.

Appellant also complains of the introduction of certain correspondence which passed between the Hotel Baltimore and the plaintiff bank. It was not incompetent.

A final complaint is made about the amount of the judgment, $199.20. Since the bank paid $164.80 on defendant's behalf nearly four years before it obtained judgment, we do not detect any substantial error in the mathematical computation of principal and interest, although the aggregate sum allowed does seem a trifle low.

The judgment is affirmed.