### NORTH ATCHISON BANK *v.* GARRETSON *et al.*

*(Circuit Court of Appeals, Eighth Circuit.* June 13, 1892.)

#### No. 73.

**1. BANK CHECK—ACCEPTANCE BY TELEGRAM.**
    One T., having purchased certain cattle, offered his check for $22,000 in payment. The seller refused to accept it or part with the cattle until assured that the check would be paid, and therefore telegraphed the drawee, asking if it would pay T.'s check for $22,000. The drawee answered: "T. is good. Send on your paper." *Held,* that this constituted a contract to pay the check on presentation. 39 Fed. Rep. 163, and 47 Fed. Rep. 867, affirmed.

**2. SAME—AGREEMENT TO ACCEPT—IMMATERIAL VARIATION.**
    A bank which has agreed to accept a check for a certain sum cannot refuse payment because the check when presented concludes with the words "with exchange," no place of exchange being named, and the check being dated and payable in the same town; for such words are mere surplusage, and of no effect. 47 Fed. Rep. 867, affirmed.

In Error to the Circuit Court of the United States for the Western District of Missouri. Affirmed.

*Willard P. Hall* and *Vinton Pike,* for plaintiff in error.

*L. C. Krauthoff,* for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SHIRAS, District Judge. The plaintiffs below, G. A. Garretson & Co., a firm engaged in the banking business at Muscatine, Iowa, brought this action in the United States circuit court for the western district of Missouri, against the North Atchison Bank, a corporation located at Westboro, Mo., to recover the amount of a check drawn by one James Tate on the defendant bank for the sum of $22,000. The case was submitted to the trial court upon an agreed statement of facts, and judgment was given in favor of the plaintiffs, the reasons therefor being very fully and ably stated in an opinion reported in 47 Fed. Rep. 867.

The facts necessary to be stated are as follows: In September, 1888, the Muscatine Cattle Company sold to James Tate 1,000 head of cattle, at $22 per head, delivery of the cattle to be made at Pueblo, Colo. Tate offered to A. J. Streeter, the agent of the cattle company, in payment for the cattle, his check for $22,000 on the North Atchison Bank, and thereupon Streeter sent the following telegram to the bank:

"PUEBLO, COLO., Sept. 2, 1888.

"*To North Atchison Bank, Westboro, Mo.:* Will you pay James Tate's check on you, twenty-two thousand dollars? Answer.

"A. J. STREETER."

To this telegram the following reply was sent and delivered to Streeter:

"WESTBORO, Mo., Sept. 29, 1888.

"*To A. J. Streeter, Pueblo, Colo.:* James Tate is good. Send on your paper.                    NORTH ATCHISON BANK."

On the receipt of this answer, and on the faith thereof, the Muscatine Cattle Company delivered the cattle to Tate, and accepted from him in payment thereof his check in the following form:

"WESTBORO, Mo., Sept. 28, 1888.

"*North Atchison Bank:* Pay to the order of Muscatine Cattle Company twenty-two thousand dollars, with exchange.

"$22,000.                         JAMES TATE."

The cattle company, being at the time indebted to the plaintiff firm in a sum exceeding the amount of the check, exhibited the same, with the telegrams already set forth, to the plaintiff firm, and thereupon said firm accepted the check, giving the cattle company credit therefor. In due time the check was presented for payment to the North Atchison Bank, which was refused, the reason assigned being, "Want of funds." Subsequently the check was again presented, and a demand made for payment, which was refused, on the ground that "Tate had countermanded the same."

Counsel for plaintiff in error in the brief filed in the cause discuss at some length the question whether the check is to be deemed an inland bill of exchange or a certified check, but, as we view the case, these are matters aside from the real question at issue. In the petition filed in the cause the plaintiffs therein set forth the facts *in extenso*, and base the right of recovery thereon, regardless of the technical distinctions existing between inland bills of exchange and checks accepted or certified. The rights of the parties are dependent solely upon the question whether the North Atchison Bank bound itself unconditionally in writing to pay Tate's check on the bank for the sum of $22,000. If that is the fair meaning of the telegram passing between Streeter, as the representative of the Muscatine Cattle Company, and the defendant bank, then, as the admitted fact is that the company delivered the cattle to Tate and received the check in payment therefor on the faith of the promise made by the defendant bank, it follows that the bank is bound to make good the promise made.

When correspondence is had and a contract is entered into by means of the telegraph, it is not to be expected that the terms thereof will be set forth with as much fullness as would ordinarily be the case if the parties were in each other's presence. The telegraph, however, is now a well-recognized means of communication in the business world, and contracts made through its use must be construed and enforced according to the intent of the parties thereto. The first communication between the contracting parties came from the agent of the cattle company. The admitted facts in the case clearly show that his purpose in sending the telegram was to ascertain whether he could safely accept Tate's check for $22,000 in payment for the cattle to be delivered, in

the assurance that it would be paid by the bank on presentation. The question put to the bank was wholly free from ambiguity. It was clear, direct, and pointed: "Will you pay James Tate's check on you, twenty-two thousand dollars? Answer." There can be no doubt that it was Streeter's purpose, in sending this telegram, to ascertain whether the bank would bind itself to pay the check in case he took it in payment for the cattle to be delivered to Tate. Can there be any doubt that the bank must have understood the purpose and meaning of the dispatch thus addressed to it? The bank was engaged in the business of receiving money on deposit, and paying it out on checks drawn by its depositors. No other meaning could be given to the telegram by the bank than that James Tate's check on the bank for $22,000 had been offered to Streeter, and before he accepted it he wished to know whether it would be paid on presentation. So far, therefore, as the meaning of the telegram sent to the bank is persuasive in determining the contract of the parties, it must be held that its purpose was to procure an absolute promise of payment from the bank, before the same could be received in payment for the cattle contracted to be sold to Tate.

It cannot be questioned, and it is practically admitted by counsel for the bank, that if the answer had been, "The bank will pay Tate's check for twenty-two thousand dollars on presentation," there would be no doubt that thereby the bank would have been bound absolutely for the payment of the check. Can any other meaning be fairly given to the words actually used by the bank in answering the question put to it? These are, "James Tate is good; send on your paper." Counsel for plaintiff in error claim that the answer should only be construed to be a statement that Tate was good for the amount named, and cannot be construed to be a promise to pay the check. The question put to the bank, and to which an answer was requested, was not whether Tate was good, but whether the bank would pay his check for a given sum. It cannot be supposed that the bank intended to return an ambiguous answer for the purpose of misleading the party asking the question, and therefore, if the answer had been limited to the words "Tate is good," there would be ground for holding that the bank thereby intended an affirmative answer to the categorical question put to it; but all doubt is put at rest by the remaining words of the answer, to wit, "Send on your paper." These words invited action on part of the person to whom they were addressed. They are not merely an expression of an opinion. Read in connection with the message sent by Streeter, and which they were intended to answer, the meaning thereof is, "Send on your check on Tate, and we will pay it." When the answer reached Streeter he was clearly justified in assuming that the meaning of the bank was that if he sent on the check the bank would pay it on presentation.

The intent of the parties who thus exchanged proposition and answer, by means of the telegraph, is to be derived from the words used by them, read in the light of the circumstances then in existence. The court is not called upon to consider the nice distinctions that may exist between bills of exchange, checks accepted, and checks certified, but

only the question whether the defendant bank agreed to pay Tate's check for $22,000, and, as already stated, that, in our judgment, is just what the bank, in the answer it returned to the telegram sent to it, bound itself to do; and when, on the faith of this promise, the cattle company delivered the cattle to Tate, and accepted the check in payment, the bank became legally liable for the payment of the check in question.

It is said, however, that the check presented is not the same as the check named in the telegraphic correspondence, because it contains the words "with exchange," and thereby the amount needed to pay the check is increased over the sum named in the telegram. This is evidently an afterthought. This objection was not taken when the check was presented, and it is wholly without merit. No legal force can be given to these words. They cannot be construed to increase the amount called for by the check, and they are clearly surplusage, and are therefore to be disregarded. The check is dated at Westboro, Mo., and is payable at Westboro, and therefore there is no basis for calculating exchange. The bank is not directed to pay $22,000 with exchange on Chicago, New York, or any other place. According to its terms, it called for the payment at Westboro, Mo., of the sum of $22,000, which is just the sum, no more and no less, which the bank agreed to pay by the answer it returned to the telegram sent it on behalf of the cattle company. The judgment below is affirmed, at cost of plaintiff in error.