GUTHRIE NATIONAL BANK v. JAMES H. GILL.

(Filed February 18, 1898.)

1. LIABILITY OF BANK—*Refusal to Pay Drafts.* A draft drawn in the ordinary form does not constitute an equitable assignment, *pro tanto*, of funds in the hands of the drawee to the credit of the drawer, before such draft has been accepted or presented for payment.

2. IMPLIED PROMISE TO PAY. There is an implied promise on the part of a bank when receiving deposits to pay them out on the checks of the depositor to any person in whose favor he may draw the same, and the check-holder is subrogated to the rights of the depositor in so much of the deposits as the check may call for remaining in the bank to the credit of the depositor at the time when such draft is presented for payment.

3. GENERAL ASSIGNMENT BY DEPOSITOR FOR CREDITORS. Where a depositor makes a draft on a bank in which he has funds to his credit, and afterwards makes a general assignment for the benefit of his creditors, and the holder of such draft presents the same to the drawee for payment after such assignment is made, and payment is refused, he cannot maintain an action against the drawee and recover on said draft, although at the time the draft was presented for payment the drawee did not know of the assignment, but learned of such assignment before making payment, and by reason of such knowledge, refused payment.

(Syllabus by the Court.)

*Error from the Probate Court of Logan County; before J. C. Foster, Probate Judge.*

S. L. Overstreet and Herod & Widmer, for plaintiff in error.

George S. Green, for defendant in error.

Action by James H. Gill, indorsee, against the Guthrie National bank, as drawee, upon a bill of exchange. From a judgment for plaintiff the defendant below brings error. Opinion of the court by

TARSNEY, J.: On February 20, 1897, the Bank of Mulhall, by its cashier, made its draft payable to the order of J. R. Keaton for the sum of $156.05, directed to the plaintiff in error. On March 2, 1897, Keaton indorsed the draft to the order of the defendant in error. At the close of business on March 11, 1897, plaintiff in error held on deposit to the credit of the Bank of Mulhall the sum of $364.69. At 1 o'clock on the morning of March 12, 1897,

the Bank of Mulhall made a general assignment of all its property, credits and effects to George E. Billingsley, for the benefit of its creditors.  Billingsley accepted the trust about 7 o'clock A. M. of that day, and at that hour took possession of the place of business of the Bank of Mulhall, and all the effects contained therein, and at 8:40 o'clock, A. M., of the same day, filed the deed of assignment for record in the office of the register of deeds for Logan county, and, afterwards, in due time and as required by law, filed an inventory of the assets and liabilities of said bank.  About 8 o'clock, A.M., of said 12th day of March, 1897, plaintiff in error received through the mail a letter from the First National Bank of Oklahoma City, enclosing for collection the draft in controversy.

The Oklahoma City bank was a correspondent of plaintiff in error's bank, and at the time had an account therein.  Between 8:45 and 9 o'clock, of the morning of the said 12th day of March, the paying teller of said plaintiff in error bank stamped said draft with a stamp of said bank, marking it "paid," and placed the draft and the letter accompanying the same in a file used for that purpose to await future action, viz.: the making of the proper entries upon the books of said bank, crediting the account of the Oklahoma City bank with the amount of said draft and charging the account of the plaintiff in error bank with the Oklahoma City bank with the amount thereof.  Such entries were never made for the reason that immediately after said draft was so stamped, plaintiff in error received a telegram from said assignee notifying it that he had been made assignee of the Bank of Mulhall, and not to pay any drafts or orders drawn by said bank.  Upon the receipt of this telegram the presi-

dent of the plaintiff in error bank immediately directed said paying teller to erase the stamp that had been placed upon said draft and to refuse the payment thereof; that such erasure was made and the draft placed in the hands of a notary for protest, and the same was protested for non-payment. The paying teller testifies that if payment had not been stopped, in the course of business that would have been pursued to have completed the payment, at 3 or 4 o'clock of the afternoon of that day, entries would have been made on the journal of the bank, charging the amount of the draft to the Bank of Mulhall, crediting the amount thereof to the balance due the Oklahoma City bank, and such entries would have to be carried into other books, viz.: a ledger and the bank's general balance ledger; and that when such entries would have been made, notice would have been sent to the Oklahoma City bank; that none of these entries were made upon the books and no notice was given.

•The defendant in error contends that the giving of a check or the issuance of a draft is an equitable assignment of enough of the funds in the hands of the drawee at the time the check is given or the draft issued to satisfy such check or draft, but concedes that upon this point the authorities are in conflict, and further concedes that this court might feel obliged to follow the rule of the supreme court of the United States upon the question, and that upon this point the recent case of *Fourth Street Bank v. Yardley*, 165 U. S. 634, and the previous decisions of said court thereon, (*Bank of Republic v. Millard*, 10 Wall. 152; *First Nat'l Bank v. Whitman*, 94 U. S., 343,) are in conflict with defendant in error's contention.

In these cases it is held that, as between the holder and

the bank upon which such check or draft is drawn, it is
settled that, unless the check or draft be accepted by the
bank, an action cannot be maintained by the holder
against the bank.  On the other hand, it is held by a very
respectable line of authorities that a check drawn upon
an existing fund in a bank is an absolute transfer or
appropriation to the holder of the amount of said funds
designated in the check then in the hands of the drawee;
that a bank receives desposits on the expressed or implied
promise to pay them out upon the checks of the deposi-
tors, and that the depositor may draw his check for a
small or large amount, payable to his creditors or those
to whom he desires to pay money, and the bank, by re-
ceiving the deposit, impliedly promises to pay such
checks, by whomsoever presented; and that the holder of
such check may sue the bank refusing payment, though
there be no acceptance.

It is not necessary to a decision in this case that we
should determine whether this court is absolutely re--
quired to follow a rule of decision of the supreme court
of the United States in matters other than those involv-
ing federal questions, or, (should we hold the negative of
that proposition,) to examine and determine between the
conflicting authorities presented; for, as we understand
those authorities, the question in conflict does not arise
upon the facts of this case.  As we interpret the authori-
ties that are in conflict with the rule of the supreme
court of the United States, concerning the necessity for an
acceptance by the drawee to authorize an action against
him by the holder, they do not go to the extent of holding
that the mere making and delivery of the draft to the
payee gives a right of action against the drawee by the

holder, but that, to create such right of action, such draft must be presented for payment and that there must be funds in the hands of the drawee at the time to the credit of the drawer.

In this case, no question arises as to time when the draft was presented, nor is there any contest between the defendant in error and other check-holders. The contest is between the holder and the drawee, and the question is, had the bank sufficient funds of the drawer when the draft was presented? If it had, it should have paid the draft; failing in which, the action was properly brought. On the contrary, if it had no funds or not sufficient funds of the drawer when the draft was presented to pay the same, it cannot be held liable in this action. The real question, therefore, is, was there funds in the hands of the plaintiff in error belonging to the Bank of Mulhall which plaintiff in error was authorized and obligated to appropriate to the payment of this draft at the time it was presented for payment.

As we view this case, there is no question of acceptance or payment in it. Plaintiff in error cannot be held as an acceptor, there being no evidence in the record to establish any such relation. Whatever might be the effect of the action of the paying teller in stamping the draft, as tending to establish an actual payment, it had no tendency to establish an acceptance. Acceptance and payment are essentially and inherently different; the one is an agreement or promise to do somehing; the other is the actual doing of that which had been previously promised. There can be no doubt that the act of the paying teller was an act done in contemplation of payment, but there was no completed payment. The payment would not be

complete until the accounts of the several parties inter-
ested had been adjusted on the books of the plaintiff in
error and notice sent to the party credited by such pay-
ment.  Until the transaction was thus completed, it was
inchoate and plaintiff in error might, for lawful cause,
suspend or refuse to complete such payment.  The word
"paid" stamped upon the draft does not indicate a prom-
ise; it implies none of the elements of an agreement, and,
if it did, it would yet be incomplete to make an accept-
ance.  An acceptance is not complete until the instrument
has been returned to the holder.  So long as the bill re-
mains in the hands of the drawee, although he may have
written an acceptance upon it, the acceptance is not fully
binding and he may, at least while he has not communi-
cated the facts of his acceptance to the holder, obliterate
his  acceptance  and  re-deliver  the  bill  without  in-
curring any liability as acceptor.  (4 Am. & Eng. Enc. of
Law, 2 Ed., 212.)

We do not deny the doctrine that the drawee of a bill
of exchange, although not expressly accepting it, may so
deal with it that the law will infer an acceptance on his
part, but the general rule relative to such acceptances is
that only such language or conduct on the part of the
drawee as justifies the holder in believing that the drawee
consents to pay the bill, will operate to bind such person
as an acceptor.  (4 Amer. & Eng. Enc. of Law, 2 Ed., 219,
and cases cited.)    But this doctrine of implied or con-
structive acceptance cannot apply in this case because the
holder could not have been justified in concluding that
the drawee intended to bind itself by its act of stamping
the draft, for the reason that the holder had no knowl-
edge of such act until the draft was returned protested.

The only theory in our view upon which under either line of such conflicting authorities, defendant in error's right to a recovery can be urged, is independent of any action of the paying teller of the bank, viz.: that when the draft reached the bank for collection, there was a fund in the bank belonging to the drawer, with which to pay the draft; that the making of the draft operated upon its presentation for payment as an equitable assignment of so much of the funds of the maker then in the hands of the drawee as would pay such draft. But the facts of this case do not support this theory, as, at the time the draft was presented, there were no funds in the bank to the credit of the maker of the draft. Such funds and credit having been previously assigned in trust for the benefit of the creditors of the maker of the draft.

We do not think it material that plaintiff in error did not know of the assignment when the draft reached the bank for collection. Such knowledge might be material if the draft had been paid and this were an action by the assignee to recover the fund, but as between the holder of the draft and the bank it is not material. The defendant in error cannot recover upon the equities which plaintiff in error might have in an action against it by the assignee had the draft been paid, but must recover, if at all, upon the theory that the fund upon which it was drawn remained the property and funds of the drawer until the draft was presented for payment, and this involves the theory that the assignment did not operate to divest the assignor of ownership and control of the funds on which the draft was drawn until the drawee had knowledge of such assignment. This theory cannot be sustained. The assignment, when it was executed and

the trust accepted by the assignee, operated *eo instanti* to divest the assignor of ownership and control of the property assigned and vest such ownership and control in the assignee for the benefit of creditors generally and, thereafter, the holder of a draft unpresented for payment is not entitled to payment in full out of any fund upon which it was drawn, but must pro rate with the other creditors.

We are of the opinion that the court below erred in sustaining the demurrer to the second paragraph of the answer of the defendant and in overruling the motion for a new trial; and the judgment herein is reversed and the cause dismissed.

Keaton, J., not sitting; all the other Justices concurring.