THE FIRST NATIONAL BANK OF ATCHISON, KANSAS, V. THE COMMERCIAL SAVINGS BANK.

No. 14,706.  (87 Pac. 746.)

SYLLABUS BY THE COURT.

1. NEGOTIABLE INSTRUMENTS—*Acceptance by Drawee of a Bank Check.* The drawee of a bank check cannot be held liable upon a claimed contract of acceptance external to the bill unless the language used clearly and unequivocally import an absolute promise to pay.

2. ———— *Evidence Insufficient to Prove Acceptance.* Such a promise is not made by returning to the telegraphic inquiry, "Is J. F. Donald's check on you $350 good?" the telegraphic response, "J. F. Donald's check is good for sum named."

Error from Atchison district court; BENJAMIN F. HUDSON, judge. Opinion filed November 10, 1906. Reversed.

*C. D. Walker, J. L. Berry,* and *Henry Elliston,* for plaintiff in error.

*Jackson & Jackson,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: J. F. Donald, having funds on deposit with the First National Bank of Atchison, Kan., drew a check upon it for $350, payable to Maria C. Donald or bearer, which he delivered to the payee. The payee indorsed and delivered the check to C. B. Bennett, who in turn indorsed and delivered it to the Commercial Savings Bank, of Adrian, Mich. Donald stopped payment of the check before it was presented for payment, and the Michigan bank sued the Kansas bank for the face of the check and interest, claiming it had been accepted in writing, and that it had been purchased for value on the faith of such acceptance. The petition was framed upon the theory that an acceptance is disclosed by the following telegrams:

"ADRIAN, MICH., October 15, 1903.
"*First National Bank, Atchison, Kan.:*
"Is J. F. Donald's check on you $350 good?
                    COMMERCIAL SAVINGS BANK."

"ATCHISON, KAN., October 15, 1903.
"*Commercial Savings Bank, Adrian, Mich.:*
"J. F. Donald's check is good for sum named.
                    FIRST NATIONAL BANK."

A demurrer to the petition was overruled, and an objection to the introduction of any evidence under the petition was likewise overruled. The case was tried before a jury and a demurrer to the plaintiff's evidence was overruled. The court properly reserved the interpretation of the telegrams to itself, but it instructed the jury as follows:

"If the jury believe that plaintiff bank, on being requested to purchase J. F. Donald's check for $350, made inquiry of defendant bank by telegraph as follows: 'Is J. F. Donald's check on you $350 good?' and you further find that said bank on the same day by telegraph answered plaintiff bank's said inquiry as follows: 'J. F. Donald's check is good for sum named,' and then that plaintiff bank bought said check on the

faith of said telegram, or acceptance, and paid therefor a valuable consideration, then your verdict should be for the plaintiff, and against the defendant bank, for the full amount of said check, together with interest thereon from October 17, 1903, at the rate of six per cent. per annum; but if you find the facts to be otherwise your verdict should be for the defendant bank."

A verdict was returned for the plaintiff, and the question is whether the trial court was correct in holding throughout the case that a contract of acceptance was made by the telegrams. Of course there is no dispute that the transaction is governed by sections 547 and 548 of the General Statutes of 1901, which read as follow:

"No person within this state shall be charged as an acceptor of a bill of exchange, unless his acceptance shall be in writing, signed by himself or his lawful agent.

"If such acceptance be written on paper other than the bill, it shall not bind the acceptor, except in favor of a person to whom such acceptance shall have been shown, and who, in faith thereof, shall have received the bill for a valuable consideration."

In the case of *Shutt v. Erwin,* 66 Kan. 261, 71 Pac. 521, which interprets section 547, the syllabus reads:

"The drawee of a bill of exchange or an order to pay money is not liable in an action thereon by the holder until after he has accepted such bill or order in writing."

And the syllabus of the case of *Eakin v. Bank,* 67 Kan. 338, 72 Pac. 874, is as follows:

"A bank check is a bill of exchange within the meaning of section 548 of the General Statutes of 1901, providing that an acceptance of a bill of exchange written on paper other than the bill 'shall not bind the acceptor, except in favor of a person to whom such acceptance shall have been shown, and who, in faith thereof, shall have received the bill for a valuable consideration.' "

Bank v. Bank.

Nor is there any dispute that the written acceptance contemplated by the statute may be made by telegrams. (7 Cyc. 765.)

The order contained in a check is for payment in money instantly upon demand. No presentation for acceptance and no acceptance is contemplated, as in the case of an ordinary bill of exchange. The bank is under no obligation to do other than pay, and the obligation to pay runs to the maker and not to the holder. If it refuse to pay when it has funds of the maker in its possession subject to check the holder has no remedy against the bank. He must look to the maker.

When an ordinary bill of exchange is presented for acceptance the drawee is under the positive duty of accepting or refusing to accept; and if acceptance be not plainly negatived by whatever he does he will be bound as an acceptor, because acceptance is something contemplated by the bill itself. A request upon a bank that it accept a check is a request for the creation of a legal relation between the holder and the bank wholly without and beyond the purview of the paper. If such relation be established it imposes upon the bank a liability to a party to whom it was not before bound at all, and it converts the privilege of the bank to pay if in funds into an absolute and unconditional duty to pay, no matter what may be the state of the depositor's account. Any one claiming to be the beneficiary of a contract of this kind, independent of and collateral to the check, must clearly show that the bank intended to make it.

Neither law nor custom binds parties to the use of any set formula in arranging an acceptance. They may choose their own words. Brevity is not simply allowable—it is commendable; but in all cases there must be no doubt that an absolute promise to pay was made. If the transaction involve two writings, a proposition and a response, they should be construed together. The true principle governing the interpre-

39—74 KAN.

tation of communications like the telegrams between the parties to this suit was grasped and stated in the case of *Rees v. Warwick,* 2 B. & Ald. (Eng.) 113. In that case the drawer wrote to the drawee as follows: "Yesterday we valued upon you, favor W. Johnson & Co. two months for 100 *l.* which please to honor." The drawee replied: "Your bill 100 *l.* to W. Johnson & Co. shall have attention." It was held by Mr. Chief Justice Abbott that, to make a letter an acceptance, it ought to be in terms which admit of no doubt; that the phrase "shall have attention" is at least ambiguous; that it may mean the drawee would examine and inquire into the state of the drawer's account for the purpose of ascertaining whether or not the bill would be accepted; and that unless the words used import a clear and unequivocal acceptance no recovery may be had. Mr. Justice Holroyd said:

"The very circumstance that it has been so often lamented that anything short of a written acceptance on the face of the bill should be held to make a party liable as acceptor shows the inconvenience that arises from the great uncertainty which is thereby introduced. In this case the words contended to be an acceptance are that the bill 'shall meet attention.' The defendant does not say, as in *Wynne v. Raikes,* that the bill 'shall be paid or accepted,' but in fact only that he will attend to it. Consistently then with these words it might depend on the state of the account between them whether he would accept the bill or not." (Page 116.)

Tested by this rule the defendant bank's telegram does not express an acceptance.

The inquiry indicates no clear intention to extract from the bank a new contract to pay, independent of its duty to Donald. It is entirely consistent with the expression of a simple desire for information relating to Donald's standing at the bank. It fairly means: "Is J. F. Donald's account with you sufficient to make his check for $350 good?" The answer is strictly re-

Bank v. Bank.

sponsive to the inquiry. It indicates no clear intention to make Donald's check good whenever presented and whatever the condition of his account. It is entirely consistent with the simple purpose to state Donald's standing at the bank on the day of the telegram. It fairly means: "Donald's account is now sufficient to meet a check for the sum named." The writings are not equal to the unambiguous and unequivocal "Will you pay?" and "We will pay." Other cases recognize the principle here applied. In the case of *Kahn, Jr., v. Walton et al.*, 46 Ohio St. 195, 20 N. E. 203, the inquiry was: "Are M. A. Walton's checks for $2000 good?" The answer was: "Yes, sir." (Page 201.) The court, in denying that an acceptance was disclosed, said:

"The bank is the agent of the drawer. Its duty is to pay his money as he directs. It owes no duty to the holder, except under the drawer's directions, until by virtue of those directions it assumes some obligation to the holder. Up to that time the latest order from the drawer governs. But after the bank has paid the check, or placed itself under an obligation to pay it, the drawer's power of revocation is ended. This obligation may be incurred by acceptance. It is sometimes said that the legal effect of the acceptance is to place the holder of the check in the position of a depositor. By the acceptance a new and specific engagement is entered into by the bank, which is to unconditionally pay the sum named to the legal holder of the check. The acceptance or certification is sometimes evidenced by writing the word 'good' on the check by the authorized officer or agent of the bank; but no particular mode or form is necessary, and it is generally held that a verbal acceptance is sufficient. But whatever the mode or form employed, there must be enough to indicate the acceptance of the particular check.

"It is manifest there was no acceptance, or certification of the checks in question in this case. The telegraphic correspondence between the bank and Kahn's agent amounted to no more than an assurance that valid checks to the amount stated, drawn by Walton, or that might be drawn by him, were then good. No

particular checks were mentioned in the inquiry, nor any intimation given that the enquirer had received, or was about to receive such checks; nor had the bank any means of identifying the checks to which the inquiry related. Its telegram, therefore, did not commit the bank to the payment of any particular check. At most, it was information that Walton had, at its date, money on deposit to the amount stated, subject to check." (Page 206.)

In the case of *Cook v. Baldwin,* 120 Mass. 317, 21 Am. Rep. 517, it was held that the words "I take notice of the above," written upon a bill of exchange and signed by the drawee, do not of themselves necessarily import an acceptance. The court said:

"The words written upon the bill are a recognition only that the bill has been presented for acceptance; they are not inconsistent with a positive refusal to accept or to become bound to pay the plaintiffs." (Page 319.)

In the case of *Myers v. Union National Bank,* 27 Ill. App. 254, the inquiry was: "Will drafts for thirty-eight hundred dollars, made by J. R. Snyder on you, be paid if presented Monday?" The answer was: "Drafts named are good now." (Page 255.) The court said:

"There is a distinct implication in the words 'Drafts named are good now' that the bank would not undertake to answer for the state of Snyder's account beyond the moment when its telegram was sent. . . . An acceptance is a contract, and does not differ from other contracts in the essential requirement of a meeting of minds. A bank is not bound to accept by telegram the checks or drafts of its depositors, although in possession of funds to pay. Its duty in such cases is to accept a draft, or pay a check, only on presentment. One relying on a telegram as an acceptance should see to it that the language used will, at least, fairly bear the meaning." (Page 261.)

In the case of *Bank of Springfield v. First National Bank,* 30 Mo. App. 271, a check was offered in part pay-

ment of a draft. The financial standing of the maker of the check was not good, and the bank holding the draft telephoned the drawee of the check asking if it was good. The response was that the check was "all right." The maker's account was good for the check on that day and the next, but it was not presented until the second day after the telephone communication, and then after the maker had failed. The holder sued the drawee, claiming a parol certification. In the opinion of the court several reasons were given why the plaintiff should not succeed, but the controlling one appears in the syllabus, which reads thus:

"A parol representation by the bank upon which a check is drawn that the check is good is not equivalent to a certification, and does not bind the bank to pay it whenever presented until barred by limitation; nor does it release the holder from the duty of proper diligence in presentment for payment. It binds the bank to nothing more than that the statement was true at the time when it was made."

These authorities are sufficient to illustrate the rule that the drawee of a bank check cannot be held liable upon a claimed contract of acceptance external to the bill unless the language used clearly and unequivocally import an absolute promise to pay.

The decision in the case of *Garrettson v. North Atchison Bank,* 39 Fed. 163, 7 L. R. A. 428, relied upon by counsel for plaintiff, was affirmed by the circuit court of appeals upon the identical principle discussed above. The telegrams in that case were as follow: "Will you pay James Tate's check on you, twenty-two thousand dollars? Answer." "James Tate is good. Send on your paper." The circuit court of appeals said:

"The question put to the bank was wholly free from ambiguity. It was clear, direct, and pointed: 'Will you pay James Tate's check on you, twenty-two thousand dollars? Answer.' There can be no doubt that it was Streeter's purpose, in sending this telegram, to ascertain whether the bank would bind itself to pay the

check in case he took it in payment for the cattle to be delivered to Tate.   Can there be any doubt that the bank must have understood the purpose and meaning of the dispatch thus addressed to it?   The bank was engaged in the business of receiving money on deposit, and paying it out on checks drawn by its depositors. No other meaning could be given to the telegram by the bank than that James Tate's check on the bank for $22,000 had been offered to Streeter, and before he accepted it he wished to know whether it would be paid on presentation.   So far, therefore, as the meaning of the telegram sent to the bank is persuasive in determining the contract of the parties, it must be held that its purpose was to procure an absolute promise of payment from the bank, before the same could be received in payment for the cattle contracted to be sold to Tate.

"It cannot be questioned, and it is practically admitted by counsel for the bank, that if the answer had been, 'The bank will pay Tate's check for twenty-two thousand dollars on presentation,' there would be no doubt that thereby the bank would have been bound absolutely for the payment of the check.   Can any other meaning be fairly given to the words actually used by the bank in answering the question put to it? These are, 'James Tate is good; send on your paper.' Counsel for plaintiff in error claim that the answer should only be construed to be a statement that Tate was good for the amount named, and cannot be construed to be a promise to pay the check.   The question put to the bank, and to which an answer was requested, was not whether Tate was good, but whether the bank would pay his check for a given sum.   It cannot be supposed that the bank intended to return an ambiguous answer for the purpose of misleading the party asking the question, and therefore, if the answer had been limited to the words 'Tate is good,' there would be ground for holding that the bank thereby intended an affirmative answer to the categorical question put to it; but all doubt is put at rest by the remaining words of the answer, to wit, 'Send on your paper.'   These words invited action on part of the person to whom they were addressed.   They are not merely an expression of an opinion.   Read in connection with the message sent by Streeter, and which they

were intended to answer, the meaning thereof is, 'Send on your check on Tate, and we will pay it.' " (*North Atchison Bank v. Garrettson*, 51 Fed. 168, 2 C. C. A. 145, 147.)

There is no occasion to consider what words indorsed upon a check and signed by the drawee will amount to a certification when the check is put into circulation upon the credit of the indorsement.

Donald, upon his own request, became a party to the action. The court instructed the jury to find in his favor if they found in favor of the defendant bank, and under direction of the court a verdict was returned for Donald, upon which judgment was rendered. Manifestly this judgment cannot now stand. It is therefore reversed, and the cause as to Donald remanded for further proceedings. The judgment against the defendant bank is reversed, and the cause remanded with instruction to sustain its demurrer to the petition.

All the Justices concurring.