Argued November 2, decided December 5, 1911.

## U. S. NAT. BANK v. FIRST TRUST & SAVINGS BANK

[119 Pac. 343.]

BANKS AND BANKING—CASHIER—DELEGATION OF AUTHORITY.

1. A cashier of a bank cannot delegate to an officer of another bank authority to accept drafts in such cashier's name.

BANKS AND BANKING—OFFICERS.

2. Drafts on a state bank were presented at a national bank, and the vice-president of the national bank, with the authority of the cashier of the state bank, executed a written acceptance in the name of the cashier of the state bank. *Held* that, as one person cannot be an agent and a party at the same time except with the full knowledge and consent of the principal, the acceptance by the vice-president was not authorized, and hence was not evidence of a written acceptance under Section 5965, L. O. L., requiring the acceptance of a bill to be in writing and signed by the drawee.

BILLS AND NOTES—DRAFTS—LIABILITY.

3. Where a bill of exchange is drawn upon one bank in favor of another, evidence that the bank upon which the bill was drawn could have obtained sufficient of the drawee's funds for payment was immaterial in an action on the bill, for Sections 5960, 6022, L. O. L., provides that a check or bill does not operate as an assignment of any part of the funds of the drawer, and that the payor is not liable until acceptance.

PLEADING—THEORY OF CASE—ALTERATION.

4. Where a complaint based the right to recover upon certain grounds, plaintiff cannot recover upon others, for a party may not alter his theory of action.

From Malheur:  DALTON BIGGS, Judge.

Statement by MR. JUSTICE BEAN.

This is an appeal by defendant from a judgment upon the verdict of a jury for $280.47, in the case of United States National Bank of Vale, Oregon, against the First Trust & Savings Bank of Brogan, Oregon. This action is based upon two inland bills of exchange for $120.47 and $160, respectively, upon which the plaintiff charges defendant as an acceptor; the first, with the alleged acceptance, being in the following form:

> "Brogan, Oregon, Nov. 22, 1910.  No.......
> First Trust & Savings Bank:
> Pay to the order of U. S. National Bank ($120.47) one hundred and twenty and 47-100 dollars
> > Morrison & Son.
> O. K. by Tschirgi, Cashier, 11-22-10."

The second bill is in the same form, except as to amount and name of payee.

The complaint alleges the corporate existence of the plaintiff and defendant; the execution of the bills and the delivery thereof to plaintiff; the presentment of the bills to defendant and its due acceptance of the same in writing, upon the face thereof, as follows: "O. K. Tschirgi, Cashier." At said time, E. L. Tschirgi was cashier of the First Trust & Savings Bank, of Borgan, Oregon. Plaintiff, relying upon said bills and their acceptance by defendant, then and there paid to the drawer, Morrison & Son, the amount of the bills. November 29, 1910, plaintiff presented the bills to defendant for payment, which was refused. Two causes of action are separately stated in substance as above. As to the alleged acceptance as it appears upon the face of the bills in evidence, it is noticed that the word "by" is omitted in the complaint. Defendant by its answer denies the acceptance of the bills, or that they were presented for acceptance, and admits that defendant refused to pay the same, and avers

that Morrison & Son, at the time, had no funds deposited with defendant with which to pay them. The reply puts in issue the new matter of the answer, and avers that at the time of the transaction defendant held certain assignments of accounts, and expected to get returns from certain consignments of alfalfa seed belonging to Morrison & Son.                                          Reversed.

For appellant there was a brief over the names of *Messrs. Hayes & Crandall,* with an oral argument by *Mr. G. W. Hayes.*

For respondent there was a brief over the names of *Mr. H. C. Eastman* and *Messrs. McCulloch, Soliss & Duncan,* with an oral argument by *Mr. John W. McCulloch.*

Mr. Justice Bean delivered the opinion of the court.

It appears from the evidence, which is all contained in the record, that Mr. J. P. Dunaway, at the time the transaction occurred, was the vice president and acting cashier of the plaintiff bank, at Vale, Oregon; and Mr. E. L. Tschirgi was the cashier of the defendant bank at Brogan, Oregon. At the date mentioned on the bills, W. J. Morrison, of the firm of Morrison & Son, gave the plaintiff the two bills in payment of a note, and for $160 in cash.

Mr. J. P. Dunaway testified that he called Mr. Tschirgi up over the telephone, a few minutes after he had taken the bills or checks of Morrison & Son, and told him that Mr. Morrison had stated that he had arranged with Mr. Tschirgi to take care of his checks, and he wanted to know if he would do so if the checks were presented. Mr. Tschirgi answered "that they would not"; that Mr. Morrison was looking for a remittance from Weiser, and, if the same were received, he would take care of the checks, but unless the money came he could not accept them.

After Mr. Dunaway phoned to the commission company in regard to the remittance, and reported to Mr. Tschirgi that he was informed that the remittance had been mailed, and after Mr. Morrison talked over the phone to Mr. Tschirgi, Mr. Dunaway said to the latter, "I'll mark the checks O. K. by you and send them to Boise for clearance," and Mr. Tschirgi said, "All right," and he so marked the checks. To the question, "It was at that time that Mr. Tschirgi told you to sign his name on that check?" Mr. Dunaway answered: "I didn't say that. I told him what I would do, and he said, 'All right.' On cross-examination, to the question, "You knew as a banker, after they (the checks) were certified, that the bank would be holden?" Mr. Dunaway answered: "Yes, sir; then I knew it was customary, if the cashier said it would be paid, it would be paid."

The other evidence on the part of plaintiff tended to corroborate Mr. Dunaway's testimony; but there was no other proof of any authority given to the latter to accept the checks for the Bank of Brogan.

At the close of plaintiff's case, defendant's counsel moved the court for a nonsuit, which was deniel. We will, however, pass this and consider the whole record under Section 3, Article VII, of the constitution, as amended by Laws 1911, p. 7, which among other things, provides that: "Until otherwise provided by law, upon appeal of any case to the Supreme Court, either party may have attached to the bill of exceptions the whole testimony, the instructions of the court to the jury, and any other matter material to the decision of the appeal. If the Supreme Court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; or if, in any respect, the judgment appealed from should be

changed, and the Supreme Court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the Supreme Court."

The evidence on behalf of defendant tended to show that E. L. Tschirgi, as cashier of the Brogan Bank, informed Dunaway that Morrison & Son had no funds in the Bank of Brogan; that their account was overdrawn and the firm was at that time owing the bank on some other paper; that his bank therefore could not pay the checks unless the funds were there; but that they would take care of the checks if a certain remittance in full came from Weiser; that he did not empower Mr. Dunaway to accept the checks for defendant; that the checks were not paid for want of funds on deposit by Morrison & Son.

1. Numerous errors are assigned, among them the introduction of the checks and the testimony relating to the making of the memorandum "O. K. by Tschirgi, Cashier," and the instructions of the court submitting the same to the jury, to all of which exceptions were duly reserved by defendant's counsel. Giving to the notation, "O. K. by Tschirgi, Cashier," on the face of the checks, all the meaning that may be claimed on account thereof, we do not think that this memorandum purports to be signed by the Bank of Brogan or by Tschirgi, its cashier. At the most it appears to be a notation made by Mr. Dunaway, cashier of the Bank of Vale, indicating that Tschirgi, cashier of the Bank of Brogan, had approved the checks verbally over the telephone. Tschirgi, as such cashier, had no implied authority to authorize Mr. Dunaway to accept the checks for the Bank of Brogan, and there is no evidence in the record that the defendant bank, or any officer thereof, ever empowered Tschirgi to

delegate such authority to Mr. Dunaway. Tschirgi, cashier of the Bank of Brogan, was its agent, and the general rule is that an agent in whom trust or confidence is reposed, or who is required to exercise judgment, may not intrust the performance of his duties to another. 31 Cyc. 1425; *Dorchester & Milton Bank* v. *New England Bank,* 1 Cush. (Mass.) 177; *Emerson* v. *Providence Hat Manufacturing Co.,* 12 Mass. 237 (7 Am. Dec. 66).

2. Mr. Dunaway, at the time of the alleged acceptance of the checks, was the vice president and acting cashier of the Bank of Vale. One cannot be a party, and, in the same transaction, an agent of the opposite party, except with the full knowledge and consent of such principal. It was incompatible for the cashier of the plaintiff to act as agent of the defendant in accepting the checks in question. Mechem, Agency, §§ 66, 68. Neither is there any evidence in the record to the effect that the plaintiff ratified or adopted as its own the act of Mr. Dunaway in making the indorsement on the checks. Our negotiable instruments law requires that the acceptance of a bill must be in writing and signed by the drawee. Section 5965, L. O. L. There being no competent evidence tending to show that the defendant bank signed an acceptance of the checks, we think it was error for the trial court to admit the memorandum on the checks in evidence.

3. We come now to the question of the liability of the defendant, independent of the acceptance of the checks. There was much evidence introduced as to the condition of Morrison & Son's account at the Bank of Brogan; and the opportunity of the defendant bank to obtain funds from the sale of seed and hay whereby it would be recompensed for the payment of Morrison & Son's checks, which were presented for payment November 29, 1910; and as to the arrangement claimed to have been made by Morrison & Son with the Bank of Brogan to

honor the checks. At the close of the evidence, counsel for defendant requested the court to instruct the jury to return a verdict in favor of defendant. Section 6018, L. O. L., provides that:

"A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check."

The legislative enactment now in force in this State provides that a check or bill does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies to the check. Section 6022, L. O. L. And Section 5960, L. O. L., makes a like provision in regard to a bill of exchange. This renders the testimony referred to immaterial. In the absence of an acceptance or certification of the checks involved, the defendant bank was not liable. This is now the law in those states that have adopted the negotiable instruments law (Selover, Neg. Inst. Law, § 93), and in our opinion is decisive of this feature of the case.

4. However, the complaint alleges the acceptance of the checks by defendant as the basis of this action, and the plaintiff must proceed upon this theory until the end, and recover, if at all, upon this asserted right of recovery. *Mescall* v. *Tully,* 91 Ind. 96; *Toledo, St. Louis & Kansas City R. Co.* v. *Levy,* 127 Ind. 168 (26 N. E. 773); *Whitten* v. *Griswold* (118 Pac. 1018).

After a careful consideration of all the matters submitted in this case, we are of the opinion that there was no evidence produced to sustain the allegations of the complaint or to be submitted to the jury, and that the circuit court erred in not instructing the jury to return a verdict for defendant.

Therefore the judgment of the lower court is reversed, and the cause will be remanded, with directions to enter a judgment of the same force as upon a verdict, in favor of defendant, in accordance with this opinion.

REVERSED.