Argued December 12, 1918, affirmed March 4, 1919.

## HUNT v. SECURITY STATE BANK.

(179 Pac. 248.)

**Banks and Banking—"Payment" of Check—Countermanding Check.**

1. That defendant bank after satisfying itself that check was genuine, and that there were sufficient funds to pay it, stamped it "Paid," and placed it upon spindle, *held* not to constitute "payment" which would deprive plaintiff depositor of the right to countermand the check.

**Assignments—Banks and Banking—"Check"—Liability to Holder.**

2. The relation between a bank and its depositor being that of debtor and creditor, a check, which is simply an order to pay a named person, does not of itself, where uncertified, operate as a legal or equitable assignment of any funds in the bank, and the bank, unless it accepts the check, is not liable to the holder.

**Banks and Banking—Countermanding Check—Right of Depositor.**

3. The drawer may, if he chooses, countermand check, and the bank is obliged to obey the countermanding order, unless it has paid, or has become obligated to pay the check.

[As to right of drawer of check to stop payment, see note in Ann. Cas. 1914A, 1303.]

**Banks and Banking—Checks—"Payment"—"Acceptance."**

4. "Payment" and "acceptance" are essentially different, since payment is the natural, expected and intended end of a check, while acceptance strengthens the vitality of a check, and serves to prolong, rather than to terminate, the life of it.

**Banks and Banking—Check—"Acceptance."**

5. That defendant bank, after satisfying itself that check was genuine, and that there were sufficient funds to pay it, stamped it

"Paid," and placed it upon spindle, *held* not to constitute "acceptance," in view of Negotiable Instruments Act. Sections 5965, 6018, L. O. L.

**Bills and Notes—Bill of Exchange—"Acceptance."**

6. The acceptance of a bill of exchange is the act by which the drawee manifests his consent to comply with the request contained in the bill of exchange directed to him, and it contemplates an engagement or promise to pay.

**Banks and Banking—Checks—Acceptance—Formality Required.**

7. While the acceptance of a bill of exchange on the certification of a check is usually effected in a certain manner, no particular form of word or words is required; any words or expressions intended to be an acceptance by the bank being sufficient.

**Banks and Banking—Countermanding Check—Duty of Bank.**

8. Where check drawn by plaintiff on defendant bank was countermanded by plaintiff before defendant had either paid or accepted it, the bank was not liable to the holder, in view of Section 6022, L. O. L., and where bank, in disregard of the countermand, paid the check, it is liable for the amount thereof to plaintiff.

From Marion: George G. Bingham, Judge.

Department 2.

The defendant, The Security State Bank, is a corporation engaged in the banking business in Woodburn, Oregon. The plaintiff, John P. Hunt, opened a general deposit account in the bank and afterwards on January 24, 1917, he drew a check directing the bank to pay $90 to the order of E. Burdick and delivered the check to the payee in Salem. On January 27, 1917, at about 8:30 A. M. the defendant received, through the mail, from the United States National Bank of Portland a "cash letter" and ten checks drawn on the Woodburn bank. The "cash letter" is dated January 26, 1917; it contains an itemized statement of the amounts of the accompanying checks, shows that the total amount of the checks is $671.95 and directs the Security State Bank to remit to the United States National Bank "in Portland Exchange." The Burdick check was among the ten

checks received with the "cash letter." When the
Burdick check reached the plaintiff it bore on its back
the indorsements of E. Burdick, Ashley & Rumelin,
Bankers, and the United States National Bank. Im-
mediately upon receipt of the "cash letter" and the
ten checks E. H. Hoff, the president of the Security
State Bank,

"footed the checks on the adding machine to see
they would total right with the cash letter, then exam-
ined the checks as to their signatures, and as to
whether each account had sufficient funds to meet it";

and then each check including the Burdick check was
marked "Paid Security State Bank Jan. 27, 1917,"
with the bank's "paid" stamp and finally each check
was "placed upon a three-cornered spindle that has
a three-cornered cutting edge, and are there muti-
lated." Whenever the Woodburn bank received a
check through the mail and ascertained that there were
not sufficient funds to pay it or if the signature was
not regular, the bank never marked the paper "paid,"
but the check was always returned to the forwarding
bank. The steps taken by the defendant with refer-
ence to the "cash letter" and checks received from the
Portland bank followed the same course which the
bank had always taken when it received checks
through the mail from outside banks. Speaking of
the practice of the bank when it cashed a check over
the counter, E. H. Hoff stated that the check was
stamped "paid" and then placed on the spindle. E. H.
Hoff testified that all checks, including both those
which were cashed over the counter and also those re-
ceived through the mail, when stamped "paid" and
placed upon the spindle were "from that time on"
used as "charge slips." It was the custom of the

bank, according to the testimony of Hoff, to leave the checks on the spindle until the afternoon at which time the bookkeeper took the checks and sorted "them in alphabetical order" and, using them as "charge slips," entered the amounts of the checks on the books of the bank against the accounts of the makers. The entries were usually made in the afternoon but sometimes when the work was "not caught up" the entries were made in the books the next morning. The "actual act of charging" the Burdick check on the books of the bank did not occur until some time in the afternoon of January 27th.

At about 9:15 on the morning of January 27, 1917, but after the Burdick check had been stamped "paid" and placed upon the spindle, Hunt appeared at the bank and asked for a statement of his account "up to date." The statement was at once prepared and delivered to Hunt. This document is in evidence and shows upon its face that it is a "statement of your account to Jan. 27, 1917"; and at the bottom of the statement we read as follows: "Balance Jan. 26, 173.23." The Burdick check is not mentioned in this statement. Upon receiving the statement of his account Hunt proceeded to examine it; and he says that when he "saw that the E. Burdick check wasn't charged" to his account, he told Hoff that he "had a check out for ninety dollars in favor of E. Burdick" and that he "desired to stop payment on the check." Hunt testified that Hoff then said: "The E. Burdick check has just arrived; I have it here right in my hand"; and according to Hunt's testimony Hoff "reached to his left and picked off the spindle the check and handed me, which was the E. Burdick check." Hunt was then asked to relate the conversation which ensued between him and Hoff and his an-

swers together with subsequent questions and answers are here set down:

"A. Why, I said, 'You haven't my account charged with the check, not in this, and I am glad I got here before the account was charged, as I want payment stopped on it.'

"Q. What did he say?

"A. He hesitated,—seemed nonplused as to whether he could stop payment or not through the fact he says, 'We have marked it "paid"—or stamped it paid.'

"Q. What else was said?

"A. Well, I told him he should send the check back —or rather he asked me what he should do in regard to it; I told him I wasn't up on banking terms but would judge he would be capable of making some interlineation, if any was necessary, through the mark "paid" and return the check.

"Q. What, if any, conversation did you have with him in reference to whether or not a remittance had been made?

"A. Well, he said no remittance had been made, and the account had not been charged."

The defendant denies that Hunt countermanded payment of the check but we shall assume that the verdict of the jury necessarily implies a finding that Hunt directed the bank not to pay the check. At about 3 o'clock in the afternoon of January 27, 1917, the defendant drew a draft directing the Scandinavian American Bank of Portland to pay to the United States National Bank of that city the sum of $671.95, the amount of the ten checks, including the Burdick check, which had been received with the "cash letter." This draft was mailed that afternoon to the United States National Bank and was subsequently paid by the drawee bank.

In March, 1917, the plaintiff received from the defendant a statement together with canceled checks

mentioned in the statement showing the condition of his account to March 2, 1917. · The statement contained a charge of $90 under date of· "Jan. 27" and the Burdick check was among the canceled checks. In the language of Hunt, "I didn't acknowledge the correctness of this statement, and I returned him [Hoff] the 90-dollar check then and there." Subsequently, on April 21, 1917, the plaintiff drew a check on the defendant for $90 payable to "self" but the bank refused to pay the check and wrote on it the words "account closed." The plaintiff then commenced this action to recover the sum of $90 which he claims the bank wrongfully charged against his account. A trial resulted in a verdict and judgment for the plaintiff for $90. The defendant appealed.          AFFIRMED.

For appellant there was a brief over the names of *Mr. Hiram Overton* and *Messrs. Smith & Shields,* with oral arguments by *Mr. Overton* and *Mr. Roy F. Shields.*

For respondent there was a brief and an oral argument by *Mr. Walter C. Winslow.*

HARRIS, J.—1. The defendant vigorously contends that it was entitled to a directed verdict. This contention proceeds upon the theory that the act of stamping the check "paid" followed by the act of placing it upon the spindle where all "paid" checks were kept until entries were made upon the books, after having first ascertained that there were sufficient funds to the credit of the drawer and that the signature was genuine, operated as a charge against the drawer and as a credit to the holder of the check and amounted to payment. The plaintiff insists that the acts of the defendant did not effect a transfer of

credit from Hunt to the United States National Bank of Portland, the holder.

2, 3. The relation existing between a bank and its depositor is that of debtor and creditor; a check is simply an order signed by the creditor (depositor) directing the debtor (bank) to pay money to a named person; an uncertified check of itself does not operate as a legal or as an equitable assignment of any part of the funds in the bank and, unless it accepts the check, the bank is not liable to the holder; and consequently the drawer of the check can, if he chooses, countermand the check or first order and the bank will be obliged to obey the second or countermanding order unless the bank has paid or has become obligated to pay the check: Section 6022, L. O. L.; *United States Nat. Bank* v. *First Trust & Savings Bank,* 60 Or. 266, 272 (119 Pac. 343); *Marks* v. *First Nat. Bank,* 84 Or. 601, 603 (165 Pac. 673); *Pullen* v. *Placer County Bank,* 138 Cal. 169, 172 (66 Pac. 740, 71 Pac. 83, 94 Am. St. Rep. 19); *Rogers Com. Co.* v. *Bank of Leslie,* 100 Ark. 537 (140 S. W. 992); *Pease & Dwyer* v. *State Nat. Bank,* 114 Tenn. 693 (88 S. W. 172); *First Nat. Bank of Durant* v. *School District No. 4, Bryan County,* 31 Okl. 139 (120 Pac. 614, 39 L. R. A. (N. S.) 655); *Hentz* v. *National City Bank,* 159 App. Div. 745 (144 N. Y. Supp. 979); *Kahn* v. *Walton,* 46 Ohio St. 195 (20 N. E. 203); *Van Buskirk* v. *State Bank,* 35 Colo. 142 (83 Pac. 778, 117 Am. St. Rep. 182); *Usher* v. *Tucker Co.,* 217 Mass. 441 (105 N. E. 360, L. R. A. 1916F, 826); 5 R. C. L. 526; 7 C. J. 701; 2 Michie on Banks and Banking, 1101.

If what the bank did prior to Hunt's conversation with Hoff amounted to payment, then Hunt had lost the right to countermand payment of the check.

4. During the investigation we must not lose sight of the fact that payment and acceptance are essentially different. Payment is the natural, expected and intended end of a check. Acceptance strengthens the vitality of a check and serves to prolong rather than to terminate the life of it: *Elyria Savings & Banking Co.* v. *Walker Bin Co.*, 92 Ohio St. 406 (111 N. E. 147, Ann. Cas. 1917D, 1055, L. R. A. 1916D, 433); *Guthrie Nat. Bank* v. *Gill*, 6 Okl. 560 (54 Pac. 434). We must remember, too, that the case now under consideration is not like those where the holder enters a bank with a check, presents it and is given credit for the amount as a deposit; nor is this case like those where the holder mails a check to the drawee bank and the latter, in obedience to instructions, charges the account of the drawer and credits the account of the holder with the amount of the check, for in all those cases payment is made just as completely as it is when the bank actually pays the money over the counter to the holder and he at once returns it to and deposits it with the bank: *Consolidated Nat. Bank* v. *First Nat. Bank,* 129 App. Div. 538 (114 N. Y. Supp. 308); *National Bank* v. *Burkhardt,* 100 U. S. 686, 689 (25 L. Ed. 766); *American Nat. Bank* v. *Miller,* 229 U. S. 517, 520 (57 L. Ed. 1013, 33 Sup. Ct. Rep. 883); *Albers* v. *Commercial Bank,* 85 Mo. 173 (55 Am. Rep. 355); 2 Michie on Banks and Banking, 1140, 1414, 1415. The instructions to the defendant were to "remit in Portland exchange." The Woodburn bank did not draw or mail its draft for the purpose of remitting to the United States National Bank of Portland until after Hunt countermanded payment of the Burdick check, and, therefore, we need not decide whether payment was completed when the draft was deposited in

91 Or.—24

the postoffice or when received by the Portland bank: See *Buell* v. *Chapin,* 99 Mass. 594 (97 Am. Dec. 58); *Canterbury* v. *Bank of Sparta,* 91 Wis. 53 (64 N. W. 311, 51 Am. St. Rep. 870, 30 L. R. A. 845); *Steinhart* v. *D. O. Mills & Company,* 94 Cal. 362 (29 Pac. 717, 28 Am. St. Rep. 132); *Winchester Milling Co.* v. *Bank of Winchester,* 120 Tenn. 225 (111 S. W. 248, 18 L. R. A. (N. S.) 441).

When Hunt ordered the defendant not to pay the check the bank had done nothing more than to satisfy itself that the check was genuine and that there were sufficient funds to pay it, and to stamp it "paid" and to place it upon the spindle. All this was merely preparing to pay; it was simply a step towards payment; it was not payment. No entry was made on the books. The drawer was not charged; the holder was not credited. It may be assumed that the bank intended to make appropriate entries on its books and to remit; but we are confronted with a situation where the bank had not yet executed its intention. An intention to pay is not payment. What the bank did was done in contemplation of payment; but payment was not completed: *Guthrie Nat. Bank* v. *Gill,* 6 Okl. 560 (54 Pac. 434); *First Nat. Bank of Murfreesboro* v. *First Nat. Bank of Nashville,* 127 Tenn. 205 (154 S. W. 965); *German Nat. Bank* v. *Farmers' Deposit Nat. Bank,* 118 Pa. St. 294 (12 Atl. 303); *Irving Bank* v. *Wetherald,* 36 N. Y. 335, 338; *Watervliet Bank* v. *White,* 1 Denio (N. Y.), 608, 611; *National Bank of Rockville* v. *Second National Bank of Lafayette,* 69 Ind. 479, 485 (35 Am. Rep. 236).

5. The plaintiff cannot recover if what was done by the defendant resulted in an acceptance of the check. While we are accustomed to associate the word "acceptance" with bills of exchange rather than with

checks for the reason that bills of exchange ordinarily contemplate presentation for acceptance and acceptance, and checks ordinarily contemplate presentation for payment and payment, and although there are points of difference between the two classes of instruments, yet it will tend to promote the harmony and preserve the integrity of the Negotiable Instruments Act ·(Sections 5834–6027, L. O. L.) if we use the nomenclature employed by that statute: *Hawley, Dodd & Co.* v. *Jette & Clark,* 10 Or. 31 (45 Am. Rep. 129); *First Nat. Bank* v. *Commercial Savings Bank,* 74 Kan. 606 (87 Pac. 746, 118 Am. St. Rep. 340, 342, 11 Ann. · Cas. 281, 8 L. R. A. (N. S.) 1148); *Van Buskirk* v. *State Bank of Rocky Ford,* 35 Colo. 142 (83 Pac. 778, 117 Am. St. Rep. 182); 8 C. J. 38, 40; Selover on Negotiable Instruments (2 ed.), 117; 3 R. C. L. 831. See note in 118 Am. St. Rep. 348; and 5 R. C. L 516. The Negotiable Instruments Act defines a bill of exchange (Section 5959, L. O. L.); and it declares not only that

"a check is a bill of exchange drawn on a bank payable on demand," but also that "Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check": Section 6018, L. O. L.

Among the provisions applicable to bills of exchange, and therefore applicable to checks, is Section 5965, L. O. L., which states that: "the acceptance of a bill is the signification by the drawee of his assent to the order of the drawer": *Van Buskirk* v. *State Bank of Rocky Ford,* 35 Colo. 142 (83 Pac. 778, 117 Am. St. Rep. 182); 8 C. J. 308.

6. The "acceptance" of a bill of exchange is the act by which the drawee manifests his consent to comply with the request contained in the bill of exchange

directed to him; and it contemplates an engagement or promise to pay: *Van Buskirk* v. *State Bank of Rocky Ford,* 35 Colo. 142 (83 Pac. 778, 117 Am. St. Rep. 182, 184); *Guthrie Nat. Bank* v. *Gill,* 6 Okl. 560, 565 (54 Pac. 434); *First Nat. Bank* v. *Commercial Savings Bank,* 74 Kan. 606 (87 Pac. 746, 118 Am. St. Rep. 340, 11 Ann. Cas. 281, 8 L. R. A. (N. S.) 1148); *Elyria Savings & Banking Co.* v. *Walker Bin Co.,* 92 Ohio St. 406 (111 N. E. 147, Ann. Cas. 1917D, 1055, L. R. A. 1916D, 433); 2 Michie on Banks and Banking, 1125; 3 R. C. L. 534; 8 C. J. 296.

A parol acceptance confers no right upon the holder, for Section 5965, L. O. L., expressly provides that "The acceptance must be in writing and signed by the drawee": *United States Nat. Bank* v. *First Trust & Savings Bank,* 60 Or. 266, 271 (119 Pac. 343); *First Nat. Bank* v. *School District,* 31 Okl. 139 (120 Pac. 614, 39 L. R. A. (N. S.) 655); 8 C. J. 303. It will not be necessary to determine whether Section 5970, L. O. L., applies to checks, for the reason that this section is not involved in this controversy. An interesting discussion of the question may be found, however, in *Wisner* v. *First Nat. Bank,* 220 Pa. 21 (68 Atl. 955, 17 L. R. A. (N. S.) 1266). See, also, 8 C. J. 302, 303, 319. We have already noticed that Section 5965, L. O. L., states that "the acceptance of a bill is the signification by the drawee of his assent to the order of the drawer"; and in this connection we may also notice that Section 6020, L. O. L., provides that: "where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance"; and, hence, whatever written words would constitute an acceptance of a bill of exchange as well as whatever written words would constitute a certifica-

tion of a check would, if found upon a check, also constitute an acceptance of the check.

7. The acceptance of a bill of exchange is usually evidenced by writing the word "accepted" on the face of the bill and the certification of a check is usually effected by writing or stamping the word "good" or "certified"; but the law does not require any particular form of word or words to constitute an acceptance, and any words or expressions intended to be an acceptance by the bank will be sufficient: 8 C. J. 303; 3 R. C. L. 1304; 5 R. C. L. 520; Selover on Negotiable Instruments (2 ed.), 134; *First Nat. Bank* v. *Commercial Savings Bank,* 74 Kan. 606, (87 Pac. 746, 118 Am. St. Rep. 340, 11 Ann. Cas. 281, 8 L. R. A. (N. S.) 1148); 7 C. J. 705; Magee on Banks & Banking (2 ed.), 319.   It was held in *Plaza Farmers' Union Warehouse & Elevator Co.* v. *Ryan,* 78 Wash. 124 (138 Pac. 651), that the written signification of assent, required by the Negotiable Instruments Law, "means an express assent, or the use of words necessarily implying an assent": See, also, 8 C. J. 307.

The word "paid" was stamped upon the check by the defendant.   When determining whether this constituted an acceptance within the meaning of the law we must not forget the essential difference between payment and acceptance.   Payment ends the life of a check.   Acceptance reinvigorates it.   The word "paid" tends to indicate, if it evidences anything, extinction rather than rejuvenation of the check.   To the extent that it speaks at all, the word "paid" tells of what has been done rather than of what will be done.   In *Guthrie Nat. Bank* v. *Gill,* 6 Okl. 560, 565 (54 Pac. 434, 436), it was decided that the word "paid" stamped upon a draft, "had no tendency to establish an acceptance" because it did not evidence "an agreement or promise to do something."   To the

same effect is: *Elyria Savings & Banking Co.* v. *Walker Bin Co.,* 92 Ohio St. 406 (111 N. E. 147, Ann. Cas. 1917D, 1055, 1056, L. R. A. 1916D, 433). See, also, 2 Michie on Banks and Banking, 1129. Stamping the word "paid" did not of itself produce an acceptance of the check.

There is yet another reason for concluding that the acts of the bank did not work an acceptance of the check so as to make the drawee liable to the holder. Section 6023, L. O. L., declares that:

"In this act, unless the context otherwise requires, 'acceptance' means an acceptance completed by delivery or notification."

Even though it be assumed that writing the word "paid" on a check evidences a promise to pay and, therefore, indicates an acceptance, nevertheless the acceptance was not completed by delivery or notification. It was held in *First Nat. Bank of Murfreesboro* v. *First Nat. Bank of Nashville,* 127 Tenn. 205, 216 (154 S. W. 965, 968), that,

"there can be no acceptance upon the part of the drawee, receiving remittances from a distance, and acting in the dual capacity of collecting agent of the holder and as agent of the drawer to pay, until and unless the transaction is completed by a delivery to the remitting bank in due course, or a notification to someone entitled to be notified."

See, also, *Guthrie Nat. Bank* v. *Gill,* 6 Okl. 560, 565 (54 Pac. 434); 2 Michie on Banks and Banking, 1129.

8. In Section 6022, L. O. L., it is said that "the bank is not liable to the holder unless and until it accepts or certifies to the check." Hunt countermanded payment of the check before the bank had either paid or accepted it; and the judgment appealed from must therefore be affirmed.        AFFIRMED.

McBRIDE, C. J., and BEAN and JOHNS, JJ., concur.